HANOVER FIRE INSURANCE CO., PLAINTIFF IN ERROR, VS. B. C. LEWIS & SONS, DEFENDANT IN ERROR.

FIRE INSURANCE, PROOFS OF LOSS, ARBITRATION OF LOSS, PLEADING, INTEREST.

1. Where a plea to an action brought upon a policy of fire insurance is interposed alleging that no preliminary proofs of loss have been furnished by the assured according to the provisions of the policy requiring such proofs as a condition precedent to the right to sue thereon, a replication to such plea is bad that simply alleges "that proofs of loss were furnished on blank forms furnished to plaintiffs by defendant for that purpose," without alleging that the proofs so furnished were in accordance with the requirements of the policy; and a demurrer to such replication should be sustained.

2. G. and E. were partners in a general banking business, and as such partners were the sole owners of a house and the land upon which it was situated, which house they insured against loss by fire, the policy issued to them containing the following provision: "If the property be sold or transferred, or any change take place in the title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance, it should render the policy void." After the issuance to them of the policy, but prior to the destruction of the property by fire, G. and E. admitted W. into their firm as a partner, upon a verbal agreement that he was to have no interest

14

in the properties of the former firm, but a fixed interest only in the profits of the firm's business generally. *Held*: That this did not give to W. any interest in the insured property, nor work such change in the title, ownership or possession of the property as would avoid the policy under the above quoted provision therein.

3. Where the insurers, after receipt of proofs of loss, in a correspondence by letter repeatedly calls upon the assured for further or more particular information as to the interest or ownership that a party named in the proofs has in the insured property and in such correspondence and otherwise are silent as to any other defect in the form or substance of such proofs, and fail to call the attention of the assured to any other defect that may exist in the proofs furnished, such silence and failure of the insurers to call the attention of the assured thereto, held to be a waiver on their part of any defect in such proofs not discovered by them to the assured; and *Held*: That where the particular matter or information asked for in such correspondence is not requested to be furnished in verified form, such failure to request verification thereof is a waiver of that formality. *Held further*: That the information asked for by letter when supplied by letter, will be treated as supplementary to such proofs upon the particular subject to which they relate. *Held, further*: That such proofs of loss and letter correspondence supplementary thereto are admissible in evidence at the trial to establish the fact that the requirements of the policy as to the furnishing of preliminary proofs of loss have been complied with before institution of suit.

4. Where the assured inadvertently make an incorrect statement or mistake in the preliminary proofs of loss furnished to the insurers after loss, such statement or mistake may be afterwards corrected and explained by parol testimony at the trial of a suit upon the policy, where the same explanation or cor-

rection has been asked for by letter and given in substance by letter prior to the institution of the suit

5. In the trial of a suit upon a policy of fire insurance an unverified estimate of the cost of replacing the destroyed property made by a party while in life, but at the time of the introduction of such estimate, deceased, is inadmissible in evidence for any purpose; and the fact that the party who made such estimate is dead at the time the same is offered in evidence does not render such estimate admissible.

6. Where a policy of fire insurance contains the following provision : "In case differences shall arise touching any loss or damage after the proof thereof has been received in due form, the matter shall at the written request of either party be submitted to arbitrators indifferently chosen, whose award in writing shall be binding on the parties as to the amount of such loss or damage, but shall not decide the liability of the companies respectively under this policy." *Held*, to be a valid and binding covenant, and that when the parties under its provisions have submitted the finding of the amount of such loss to such arbitration, they are mutually bound as to the "amount" of the loss by the award of the arbitrators, unless such award, under proper pleadings, is avoided for fraud or other matter legally recognizable as vitiative thereof, and, that unless so avoided, the assured are limited in their right of recovery to the amount so awarded.

7. The arbitration provided for under such provision in a policy of insurance does not undertake to oust the courts of their jurisdiction, and is not obnoxious to law. Neither is it necessary that such arbitration should be conducted in accordance with the statute, McClellan's Digest, p. 105 et seq. Neither is it necessary to make such award available, that the same should be accepted or acted upon in anyway by the parties. Neither is it necessary, to render such award available as a defense in limitation of the amount of recovery, that the amount of such award should be paid or tendered. Such an award when

212　　　　　SUPREME COURT.

Hanover Fire Ins. Co. v. B. C. Lewis & Sons.—Argument of Counsel.

specially pleaded in limitation of the recovery sought for, is admissible in evidence upon the trial of a suitor upon the policy.

8. It is error for the trial court in a charge to the jury to supply any fact from other facts adduced in evidence, but should leave every fact and its establishment or non-establishment to the determination of the jury alone.

9. Where a policy of insurance provides that the amount of the loss insured shall be due and payable sixty days after the furnishing by the assured of proofs of loss as provided by the policy, the assured are entitled to interest upon the amount of their recovery from a date sixty days after the furnishing by them of such proofs of loss.

Writ of Error to the Circuit Court for Leon county.

The facts of the case are stated in the opinion of the court.

*W. A. Blount* and *Fred T. Myers* for Plaintiff in Error.

*R. W. Williams* for Defendant in Error.

Part of Brief of R. W. Williams:

Receiving a certain share of the profits in lieu of wages, does not give the party receiving such share an interest in the property. Collyer, Partn. Secs. 15, 16, 85, 89, and cases there cited.

A right to share in the profits of a business, may have the effect of rendering a person liable to third persons as a partner in respect of transactions arising

out of the business in the profits of which he is to participate, but it does not give him any interest in the property itself. An agreement to receive a share of the profits, in lieu of wages would not convert that which was obtained by the separate property of one into the joint property of both. Smith vs. Watson, 2 Barn. & Cres., 401.

Taking the view of this matter assumed by the defendant Co., as to interest of W. C. Lewis in the insured property, still the property and the amount due on the policy would be due and payable to plaintiffs. It is clear from the testimony that the interest of W. C. Lewis, if any, was contingent, in futuro, and at most, an agreement to sell an interest upon the happening of certain contingencies as to profits, etc. Plaintiffs even deny this and it is only introduced here to answer the claim of defendant. In the case of Parcell vs. Grosser, 1 Central Reporter, 405, Penn., Oct. 5th, 1885, this question was in issue and is disposed of by the court in the following language: The effect of a mere contract of sale on the relative rights of the parties thereto and their interest in existing policies of insurance was considered in Perry County Ins. Co. vs. Stuart, 7 Harris, 45; Ins. Co. vs. Updegraff, 9 Harris, 513; Reed vs. Lukins, 8 Wright, 200; Hill vs. Cumb. Valley M. P. Co., 9 P. F. S., 474, and cases therein referred to. In the case first above cited, it is said : '' Where one has entered into an agreement for the sale of his insured property but has not made a conveyance thereof nor received

the purchase money, his interest in the property and policy is not hereby parted with so as to bar his right of action on the happening of a loss." It is also held in Reed vs. Lukins, *supra*, that, "the money due on a policy of insurance for a loss by fire, occurring between the date of such contract and the time fixed for delivery of deed, as between the company and the vendor by whom it was insured, belongs to the latter." The same principle is more fully elaborated in Hill vs. Cumb. Val. M. P. Co., *supra*. This case is also authority on the point that the policy was not avoided by the contract of sale.

Insurance companies cannot expect thus to escape from the payment of an honest claim through technicalities which do them no harm. Universal Fire Insurance Co. vs. Block, 1 Central Rep. 557, Penn. Oct. 5th, 1885, citing Beatty vs. Ins. Co., 16 P. F. S., 9; Ins. Co. vs. Flynn, 2 Out., 627.

In the case of Marthinson vs. North British Mercantile Ins. Co., reported in 7 West. Rep., 641 Mich, Jan. 20th, 1887, a correspondence followed the furnishing of proofs of loss, as in the case at bar, and the letters from the company, somewhat similar to those in the case under consideration, are given in the opinion of the court, and in reference thereto the court say "it is evident from the record that the assured did all they possibly could do in the matter of perfecting these proofs and the letters of the company show an express purpose to embarass and hinder them in the making of such proofs. There is a lack of candor and straight-

JUNE TERM, 1891.          215

Hanover Fire Ins. Co. v. B. C. Lewis & Sons.—Argument of Counsel.

forward dealing on the part of the company not commendable to say the least. There seems to have been an evident purpose to impose blind conditions in the hope of being able to legally reject the proofs of loss."

All information which the insurers gain by going into an investigation after having received proofs inures to the benefit of the insured so far as it supplies any deficiency. 4 Waits A. & D., 81, citing 9 Barb. (N. Y.), 191 and 67 N. Y. (22 Sick.), 283.

Fifth assignment. It was entirely competent and proper for plaintiff to account for the absence of T. J. Rawls by proof—that he was dead.

Sixth assignment. The policy provides that "in case differences shall arise touching any loss or damage after proof thereof has been received in due form, the matter shall at the written request of either party, be submitted to arbitrators," etc. Until this *written request* is made *after receipt of the proofs of loss* there is no obligation to submit to arbitrators. No such request is shown to have been made. The papers offered by defendant were at best only an effort to settle without suit and prior to the proofs of loss, being April 10th. 1885.

The attempt to introduce these papers must be held to be an admission by the defendant that the requisite and proper proofs had been made and received, as by the terms of the policy the making and receipt of the proofs are prerequisite to the attempt to arbitrate. What is the position of the defendant, before the court, on this

question? It is this—having by contract, guaranteed to indemnify the plaintiffs for loss of certain property by fire, and having received the money of plaintiffs, three years before the loss, which was a total loss— they now say the plaintiffs should not recover because they contend the property was worth a less sum and notwithstanding they offered no evidence of its value, which is proven by the plaintiffs and stands uncontradicted, but they say you agreed to have the value appraised, which was done and we claim the benefit of that, although we have not paid the sum appraised or any other sum nor have we offered to pay or tendered to you that amount. On the contrary, we now claim that we owe you nothing, but if the courts should determine that we do, we ask them to only require us to pay you what we had the privilege of, at least, offering, but which we did not offer. After getting you into an agreement to adjust, we decline to perform our part and then insisted that an indefinite amount must be deducted for the interest *we claim* another party had in the property, but which interest you deny and we have failed to prove. Having driven you to the courts in search of your rights, we appeal to the courts to sustain us in this altogether one-sided position. Will this court do so? The lower court refused.

The very essence of a submission to arbitration is to obtain a fair, just and equitable settlement of differences existing between parties; and the award must be a complete settlement of those differences and require performance by both. Now, according to the theory

of the defendant the only question determined by this so-called arbitration was the value and amount the defendants were to pay, if they ever pay anything, nothing more, not that they shall pay the amount found.

This was a total loss in the case of a single insurance and the maximum amount to be paid by the insurers $5,000. Proofs of loss are submitted showing the value to exceed the maximum and to be $7,043.10.

The insurer asks for an arbitration and the so-called award is made at $4,172.75. Does the defendant pay this? Oh, no; they say *we* are bound to nothing, but now we have secured this arbitration; if you sue and recover judgment against us, we will only pay the $4,-172.75.

What was the object or the possible advantage to the insured in this so-called arbitration? Under the policy they were limited to $5,000, provided the property destroyed was worth that amount. Arbitrators could under no circumstances increase that amount, no matter what they might find to be the value of the property; therefore, an arbitration simply to ascertain the value of the property could not possibly be of any advantage to the plaintiffs. On the other hand if the defendant could so manage the so-called arbitration as to get a reduction in value they would be the gainers. If not they could not be hurt, because they could still go into court and submit testimony as to the value and if successful in procuring testimony favorable to them they

could obtain a verdict accordingly. Not so with the plaintiffs, according to their theory. They are limited to the amount found by the arbitrators. How is this value reached by these so-called arbitrators? By testimony or evidence of any kind? If so we have no intimation of it. On the contrary it is determined in the most arbitrary matter—the dictum of the arbitrators.

In addition to the proofs of loss, the testimony of three credible and uncontradicted witnesses, on the trial, prove the value to exceed $5,000. Now if the dictum of these so-called arbitrators were considered it could at most be the statement of two, not under oath, nor subjected to cross-examination, as against the proofs of loss and the testimony of three on the trial, sworn and cross-examined.

This was not an arbitration; it was only an effort to settle without suit. The papers show that the so-called award was made by only one designated party and one unknown and unqualified party.

There was no award as will be seen by the paper marked Award of Builders. This paper only purports to be a "report that we have appraised and determined the damage to be $4,172.75." No award that defendant shall pay this or any amount, or that it shall be in full of plaintiffs' claim or that plaintiffs shall release. At best its effect, if any, would be to limit the plaintiffs to the amount named and it does not bind defendant to pay even that amount. This was uncertain; not

final, not mutual. Tipping vs. Smith, 2 Strange, 1024; Clapcott vs. Davey, by Holt, C. J., 1 Ld. Ray., 612.

The cases cited by plaintiffs in error are actions in award or submissions to arbitration, to settle all matters in dispute between the parties, and said submissions were made a rule of court and there was bond for performance and by these submissions the parties were bound to abide the award and had their recourse for non-performance against the bond—these are inapplicapble to the case at bar. There was no point made in these cases as to the award except non-performance.

The case of Allen vs. Milner, 2 Crompton & Jarvis, 47-53, more nearly corresponds with the case at bar. That was an action for money due for tolls. Plea, submission to refer to arbitration, and award. The plaintiff sued for fifty pounds, the award was for thirteen pounds. Held, by Lord Lynhurst delivering the judgment of the court, and discussing the question of this plea fully, and considering Crofts vs. Harris, Gascoyn vs. Edwards, cases cited by plantiffs in error, and other cases, that the plea is bad and the plaintiffs are entitled to judgment.

The question as to any interest of W. C. Lewis was subsequent, and altogether a new controversy and the defendant should have set forth in their plea that they tendered the money in full of all matters to the time of submission. Squire vs. Grevett, 2 Ld. Ray.. 964.

Agents' authority cannot be established by his own

declarations.  An agent's authority to submit to arbitration must appear on the record.  Hawker vs. Dement, 52 Am. Dec., 673, S. C., 9 Gill., 7, citing James vs. Stookey 1 Wash. C. C., 330; 30 Am. Dec. 627, citing Eastman vs. Burleigh, 3 N. H., 484.

It is error, in the trial of a case, to permit evidence to go to a jury that shows that an award had been previously made by arbitrators in the same matter in favor of one of the parties; the tendency of such evidence being to give to the former successful party the benefit of whatever impression might be made on the minds of the jurors by the fact that the cause had once been determined in his favor by judges of the parties' own choosing which may have been a substantial injury.  Stryker vs. Ross, 9 Cen. Rep., 635, Penn., Oct. 3, 1887.

The award only suspends the right of action which revives on non-performance of the award.  It is like a debtor making a composition with his creditors—they cannot sue him so long as he performs his agreement, but if he breaks it they are remitted to their original rights.  The award gives the plaintiff nothing for the detention of his debt nor any advantage that he had not before.  Awards must not be on one side only.  They are void unless something be arbitrated for the plaintiff's benefit as well as for the defendant's.  1 Am. & Eng. Encyclo. of Law, 701; Crawley vs. Hillary, 2. M. & S., 120.

The clause in the policy providing for a reference does not prevent the insured from suing and recovering

the amount of his loss in the courts. Clemen vs. Ins. Cos., 2 N. E. Rep., 59 Mass., March 1, 1886, citing Reed vs. Wash. F. & M. Ins. 138 Mass., 572.

Until executed the award was no bar. The money not having been paid the plea was bad and the papers offered properly excluded. The defendant must show payment or tender. Clapcott vs. Davey, by Holt, C. J., 1 Ld. Ray. 612; Francis vs. Crywell, 5 B. & Ald., 886.

Seventh Assignment. The policy provides that the amount of loss is "to be paid sixty days after due notice and proofs of the same." Now if this applies to the notice, that was given immediately after the loss in January, and the letter dated Feb. 3rd, show that the defendant had notice some time before. If it applies to the proofs, the letter of May 22nd, acknowledges receipt by defendants of the proofs on the 20th of May, and the instruction "E" was proper.

The policy provides that the loss shall be payable sixty days after due notice thereof and proof of the same are received by insurers. This clause evidently refers to the proofs of loss required by the policy to be made by the insured as soon after the fire as possible, and not to any performance of the plaintiffs, or to other proofs which might or might not be thereafter required of him by the insurers in establishing his claim. The provision authorizing an extension of the term of payment of a loss until after certain proofs, declarations, etc., are produced seems to exclude the

222 SUPREME COURT.

Hanover Fire Ins. Co. v. B. C. Lewis & Sons.—Argument of Counsel.

hypothesis that the defendant was also to have sixty additional days after such proofs have been made. This provision contemplates a postponement of the right to bring an action only until such proofs are made and rebuts the inference that any longer delay was intended. Clover vs. Greenwich Ins. Co., 2 Cen. Rep., 873, Ct. of Appeal of N. Y., Jan., 19th, 1886.

Eighth assignment. The first special charge asked by the defendant was properly refused by the court. It asked the court to decide that the surplus words in the proofs of loss, stating who composed the firm of B. C. Leswis & Sons was a statement that W. C. Lewis owned an interest in the property insured and therefore the jury would find for the defendant. This entire matter was fully and properly placed before the jury in the first general charge of the court, and the special charge asked was unnecessary.

The second and third special charges were covered, so far as was proper, by the second general charge of the court. They were properly refused for the addition reason that they asked instruction upon a matter not in the pleadings nor in the evidence, to-wit: Amended proofs.

The fourth special charge asked was properly refused for at least two good reasons. First, the letters did not propose to be amended proofs of loss, and second, the court very properly considered them as answers

merely to a construction put upon the proofs of loss by the defendant and denied by the plaintiffs.

The fifth and sixth special charges asked being passed by counsel for defendant we assume they are waived and pass to the seventh special charge, which was properly refused because the instruction therein contained was fully covered in the first general charge of the court.

The eighth special charge was properly refused because the subject thereof was fully covered by the first general charge of the court and by the special charge " C " asked by plaintiffs and given by the court.

The ninth special charge asked the court to instruct that the testimony of Edward Lewis showed that Wm. C. Lewis had an interest in the insured property. This of course was refused, as the court did not find that such was the testimony of Edward Lewis and therefore refused to so instruct the jury.

Examine the testimony of Edward Lewis as to the interest of W. C. Lewis. He says the relation of Wm. C. Lewis to the firm of B. C. Lewis & Sons and the property insured was truly stated in the proofs of loss and the correspondence thereafter, he had no interest in the property; he had only a fixed share of the profits. He was admitted into our firm in 1883 with a share of the profits; he put in no capital; he was to get $2,000 out of the profits, that is, if we made $2,000 or more of profits, he would get $2,000, but if we made less he would get less, and if we made no profits he would get noth-

ing. He had no authority beyond that of a clerk, except to sign the firm name. At the end of the year we would take what had been earned and divide. This property was rented at and before the fire to W. L. Robinson. The rents went to the firm. There were no profits from it, because the advances and expenses exceeded the rents. If these advances and expenses had reduced the profits of the business to less than $2,000, W. C. Lewis would have gotten less. These advances were made to Robinson to carry on his planting operations. The fixed share of W. C. Lewis was not affected by the result of the Glenwood property investment. The property would have had to yield more than $10,000 before there would have been any profits therefrom for division.

What does this testimony show to have been the relation of W. C. Lewis to the property insured. This property belonged to George and Edward Lewis, the former firm of B. C. Lewis & Sons, and was rented to W. L. Robinson. The new firm of B. C. Lewis & Sons made advances to W. L. Robinson to carry on his planting operations on said property. This was an advance from the new firm and W. C. Lewis could derive a benefit from that operation, provided W. L. Robinson repaid the advances with the charges made by the firm againt him for the advances, that is to say if the business with W. L. Robinson was profitable the profits might result in some benefit to W. C. Lewis, and that only in the event such profits were necessary to make the profits of the firm $2,000—if not so neces-

JUNE TERM, 1891.     225

Hanover Fire Ins. Co. v. B. C. Lewis & Sons.—Argument of Counsel.

sary then W. C. Lewis could have no interest in those particular profits. If the business with W. L. Robinson was unprofitable and resulted in loss, W. C. Lewis could only be affected by that loss in the event it reduced the profits of the firm below $2,000, otherwise it did not affect him and he had no interest in it. This in no manner affected the ownership or possession of the property itself, which remained as before in George and Edward Lewis. W. C. Lewis put in no capital and had no authority beyond that as a clerk, except to sign the firm name. This is not an uncommon business arrangement in commercial firms. It would be strange indeed if a clerk, whose salary was increased contingent upon the profits of a business and who furnished no capital, should become, against the will of the parties and without any consideration whatever, a part owner of the property of others, and yet such is the decision asked of this court by the plaintiffs in error.

Was Wm. C. Lewis interested in the destruction by fire? The property would have to yield more than $10,000 before there would have been any profits. The insurance was $5,000. If destroyed the yield would be $5,000 and a depreciated price for the land, and reducing the possibility of getting more than $10,000 out of it. If not destroyed by fire the probabilities of getting the $10,000 or more were much better. So if W. C. Lewis had any interest, however remote, in the final disposition of the insured property it was certainly on

15

the side of preservation and against loss of the insured property.

There was no conveyance to W. C. Lewis by deed or otherwise of any interest in this property, but it is contended that this is unnecessary as to realty belonging to a partnership, " if the parties so agree or their acts so determine it will belong to the partnership." In this case we find the parties do not and never did agree that title to this property should vest in W. C. Lewis, nor do we find acts of theirs so determining, but exactly the contrary. We find them saying always : " W. C. Lewis has no interest in this property," and no act to the contrary is pointed out. No new person interested in this property has been introduced.

The change or transfer of title, to be in violation of the policy must be more than nominal. The object of the insurance company by this clause is, that the interest shall not change so that the assured shall have a greater temptation or motive to burn the property or loss interest and watchfulness in guarding and preserving it from destruction by fire. * * * If the real ownership remains the same—if there is no change in the fact of title, but only in the evidence of it, and if this latter change is merely nominal, and not of a nature calculated to increase the motive to burn or diminish the motive to guard the property from loss by fire, the policy is not violated. Ayer vs. Hartford Fire Ins. Co., 85 Am. Dec., 558.

A prayer, the subject of which is covered by previous

instructions ought not to be granted, because such repetitions are calculated to embarrass the jury and may mislead them. Pettigrew vs. Barnum, 69 Am. Dec., 221, (11 Md., 434), citing Mut. Safety Ins. Co. vs. Cohen, 3 Gill., 459, (43 Am. Dec., 341); Stokes vs. Saltonstall, 13 Peters, 181, and many cases cited to same effect in note on page 226. 43 Am. Dec., 345, third note where many decisions are cited.

Judgment will not be reversed for refusal of a correct instruction if the others given cover the ground of controversy, and give the law to the jury as favorably for the appellants as he is entitled to ask. 69 Am. Dec., 226; Reddall vs. Bryan (14 Md., 444), 74 Am. Dec., 550 and note 555; Tainter vs. Lombard (53 Me., 369), 87 Am. Dec., 552; Bal. & Ohio R. R. Co. vs. Worthington (21 Md. 275), 83 Am. Dec., 578).

Instructions may be properly refused where they have already been given in substance. 71 Mo., 259, 5 Ind., 322, 3 Iowa, 274, and 502, 11 Md. 434, 21 Texas, 22, 27 Cal., 507; note to Strohn vs. Detroit R. R. Co., 99 Am. Dec., 127.

It is not error for a court to refuse to repeat its instructions in different language, but the same in substance after they have once been given. 99 Am. Dec., 128, top of page and many citations there found.

A party cannot complain if the instructions given were correct, covered the whole ground of the case,

and his were not given, even though correct. 99 Am. Dec., 132, and many citations there.

Refusal to give correct instructions is not error if the court has already given correct instructions on the same point. Bewer vs. Chicago, St. P. & K. C. R. Co., (Ia.) 40 N. W., 84.

When the law applicable to a case is given in clear and intelligible language, the sole function of instruction is performed, and there is no necessity for repeating the same idea in different instructions varying only in form. The court is not only under no obligation to permit a case to be argued through instructions, but it is bound to prohibit it. Sackett's Instructions to Juries, 23, citing Anderson vs. Walter, 34 Mich., 113; Keeler vs. Stuppe, 86 Ill., 309.

It is not erroneous to refuse to give instructions asked for however correct and applicable, if they have in substance already been given in the charge of the court. Id. 23, citing State vs. Stanley, 23 Ia., 526; Cramer vs. City of Burlington, 42 Ia., 315; Scott vs. Delaney, 87 Ill., 146.

Barber in his Principles of Insurance, sec. 17, says the conditions avoiding the policy in case of a change of the title or interest of the assured, are construed strictly in favor of the assured and cites a number of decisions in New York, Penn., Iowa and Mass.

Forfeitures are odious in law and are enforced only when there is the clearest evidence that that was what was meant by the stipulations of the parties. There must be no cast of management or trickery to entrap the party into a forfeiture. Helme vs. Phil. Life Ins. Co., 100 Am. Dec., 654, court, 61 Pen. St., 107.

The company received the plaintiff's money paid as the price for the risk professed to be taken by it. This money the company still retains. For what did the company receive it? In consideration of insuring the plaintiff's property. Dillon, C. J., in Bartholemew vs. Merchant's Ins. Co., 96 Am. Dec., 69 S. C.; 25 Iowa, 507.

As a contract of insurance is one of indemity, and the language of the policy is the language of the company, we are not to strain it in favor of the latter as against the assured. On the contrary we must resolve a doubt, if any exists, against the company and in favor of the assured. Allemania Fire Ins. Co. vs. Pitts, Ex. Soc., 10 Cen. Rep., 292-299, Sup. Ct. Penn., Nov. 7, 1887.

The interpretation to be applied to contracts of insurance differs from the ordinary rules and has its ground in the nature of the contract and the relative situation of the parties. It is to be construed largely for the benefit of trade and for the insured. Having indemity for its object, the contract is to be construed liberally to that end, and it is presumably the intention of the insurer

that the insured shall understand that, in case of loss he is to be protected to the full extent to which any fair interpretation can carry the contract. In the end it is the interest of both parties that the greatest indemnity shall be given and that technical defenses shall not prevail. So conditions and provisos will be strictly construed against the insurer, because they tend to impair the protection sought by the principal contract. The rule is fully established that the policy must in all cases be construed in favor of the insured. The language used being that of the insurers will be construed against them. 4 Waits A. & D., 19-20, citing many cases in support of the foregoing.

There appearing, as we believe, no error calling for a reversal of judgment defendants in error ask that the judgment be affirmed.

TAYLOR, J. :

On the 15th of August, 1885, George Lewis, Edward Lewis and William C. Lewis, styling themselves as partners under the firm name of B. C. Lewis & Sons, instituted their action in assumpsit in the Circuit Court of Leon county against the Hanover Fire Insurance Company, a corporation of the State of New York, having an agency at Tallahassee, in Leon county, for the recovery of one-half of the amount of a policy of insurance for $5,000, issued to them on April 18th, 1882, by the Germania Fire Insurance Company and the Hanover Fire Insurance Company, as underwriters,

wherein each of said companies, severally, each for itself, and not one for the other, became the insurers, for one half the amount of said policy, for a term of three years. The said policy containing a covenant that in the event the assured had to resort to judicial proceedings to enforce their claims under said policy, it should not be necessary to proceed against each of the insurers; but that such action might be brought against either of said companies, and that the other should be bound and concluded by the result of such action in the same manner and to the same effect as if it had been prosecuted against each of them separately with the like result.

To the declaration in the cause the defendant company interposed five pleas as follows: 1st. Non-assumpsit; 2nd. Nil debit; 3rd. That the plaintiffs did not before the institution of their suit make and furnish to the defendant proofs of their alleged loss in accordance with the requirements of the policy of insurance sued upon; 4th. That subsequent to the issuance of the said policy of insurance, and before the occurrence of the said fire, there took place a change in the title and possession of the said property described in the said policy of insurance, in that the plaintiff William C. Lewis, who had no interest therein when the said policy was issued, became in part an owner thereof with the plaintiffs George Lewis and Edward Lewis, and entered into possession thereof with them before the said fire; 5th. That if the plaintiffs are entitled to recover from the defendant,

they are entitled to recover only the sum of $2,086.37 ½, with interest thereon, because the said plaintiffs and defendant on the 10th day of April, A. D. 1885, submitted to an arbitration consisting of B. F. Langley and T. J. Rawls, together with a third person to be chosen by the said arbitrators if necessary, the appraisal and estimate, at the then cash value, of the damage by the said fire to said property, which appraisal and estimate by them or any two of them in writing was to be binding on both parties, as to the actual cash value of, or damage to, the said property, but without reference to any other question or matters of difference within the terms and conditions of the insurance, a copy of which said submission to arbitrators is hereto annexed marked "A," and made a part of this plea, and thereupon to-wit: On the 11th day of April, A. D. 1885, the said Langley and J. M. Wilson, the third party chosen by the said arbitrators to determine with them the said question, did make, write and deliver to the said plaintiffs and the defendant their award and appraisal in the premises, and by such award and appraisal did appraise and arbitrate the damage done by the said fire, at the sum of $4,172.75.

To the first and second of these pleas the plaintiffs joined issue. To the third and fifth pleas the plaintiff demurred, which demurrer upon subsequent argument was overruled.

To the defendant's fourth plea the plaintiffs interposed a replication in avoidance of the defense of a change of title in the property insured anterior to the

fire that is set up in the defendant's fourth plea.   After the overruling of their demurrer to the third and fifth pleas of the defendant, the plaintiffs replied to the said pleas as follows:   " The plaintiffs, as to the third plea, say that they did make and furnish to defendants proofs of their loss on blank forms furnished to plaintiffs by defendant for that purpose, and not therefore required to furnish other.   The plaintiffs, as to the fifth plea, say that the so-called arbitration was not in accordance with the statutes of this State in such cases made and provided, nor in accordance with the terms of the policy of assurance between plaintiffs and defendant, nor with the "special agreement" for submission to two builders.   That the said two builders, nor either one of same, with a properly constituted umpire have made "no" award in accordance with said agreements; that the so-called award has not been accepted nor acted upon by either party, but was promptly repudiated by plaintiffs, and defendants so advised.   That said agreement of submission was in no sense legal, just or equitable, and had no binding force, in that its effect was to bind one party only to the prospective award.   That one arbitrator was committed in favor of one party, and the umpire relied wholly upon the statements of the arbitrator or arbitrators, without personal knowledge and without testimony."

To this replication to the third plea the defendant demurred and at the same time moved to strike out the replication to the fifth plea.   Upon subsequent argu-

ment the demurrer to the replication to the third plea was overruled, but the motion to strike out the replication was granted.

At this state of the proceeding, by leave of the court, the plaintiffs amended their declaration by striking out the name of William C. Lewis, as a party plaintiff, and by styling their suit "George Lewis and Edward Lewis, formerly partners under the firm name of B. C. Lewis & Sons," as plaintiffs. Upon this amendment of the declaration, the defendant withdrew its first plea of non-assumpsit and plead the others over to the declaration as amended. The plaintiffs then filed a replication to the defendant's third plea, substantially the same that they before interposed to same, which replication was demurred to again by the defendant, and the demurrer again overruled, which ruling was erroneous. The demurrer of the defendant to the replication to defendant's third plea should have been sustained for the obvious reason that the replication demurred to does not allege that proper proofs of loss were made by the plaintiffs and furnished to the defendant, or that proofs were thus made and furnished in compliance with the provisions for such proofs in the policy contained as one of the covenants therein; but simply alleges that "proofs of their loss were furnished to defendant by plaintiffs on blank form furnished to plaintiffs by defendant for that purpose," when the pith of the third plea to which it was intended as a reply, was that no proofs "in accordance with the requirements of the policy sued upon" had been furnished. The

replication does not dispute or take issue upon this assertion in the plea, but undertakes to sidetrack the defense tendered by the plea, by substituting proofs made on a blank form, for the proofs called for by the provisions of the policy. The proofs furnished as alleged in this replication though filling up the blanks in a dozen set forms, may still have fallen far short of filling the requirements of the policy sued upon.

Upon defendant's fourth plea the plaintiffs joined issue. To the fifth plea the plaintiffs interposed a replication containing twenty-six numbered grounds of objection. Upon the filing of this replication the defendant moved the court to require the plaintiffs to elect the ground therein upon which they would rely, and to strike out the others. This motion seems, from the record, to have been "granted," and then by a subsequent order of the court, it was specifically ordered that the ground of the replication "contending for a tender of the amount of the award set up in the fifth plea," should be stricken out. Afterwards the plaintiffs seemed to have abandoned their replication to the fifth plea, and filed a general rejoinder of issue thereon. This disposes of the pleadings in the case.

On the 20th of January, 1888, the cause was tried before a jury and resulted in a verdict for the plaintiffs in the sum of three thousand dollars. Motion for new trial was made and denied, and judgment for three thousand dollars entered against the defendant company, and from this judgment the case is brought here upon writ of error.

The errors assigned are as follows: 1st. The over-ruling of defendant's demurrer to plaintiffs' replication to the third plea; 2nd. The admission in evidence of the papers denied to be proofs of loss; 3rd. The admission of the testimony of Edward Lewis as to William C. Lewis' interest in the property insured; 4th. The admission in evidence of the letters between plaintiffs and defendant; 5th. The admission of the testimony of Edward Lewis as to the whereabouts of T. J. Rawls; 6th. The refusing to admit in evidence the arbitration and award between plaintiffs and defendant; 7th. The giving of each and every of the special charges asked by the plaintiffs; 8th. The refusing of each and every of the special charges asked by the defendants; 9th. The refusing of defendant's motion for a new trial. These assignments will be considered in the order in which they come.

The first assignment has already been disposed of, and held to be error.

The 2d, 3d and 4th assignments will be discussed together, as they raise the same or closely kindred questions. It seems that when the policy of insurance sued upon was issued, George Lewis and Edward Lewis alone composed the firm of B. C. Lewis & Sons, to whom the policy was issued, and that they alone, as such partners, at the time of the issuance of the policy, owned and held the legal title to the property covered by the policy. As testified to by Edward Lewis, subsequent to the issuance of the policy, but prior to the loss by fire, William C. Lewis was taken

into the firm as a member thereof, to share in the profits alone to a certain limited extent. It is contended for the plaintiff in error that this worked a change in the title, possession, interest and ownership in the assured property, giving to the new partner, William C. Lewis, an interest therein to such an extent as to avoid the policy under the following covenant therein: "If the property be sold or transferred, or any change take place in title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance it should render the policy void." In that clause of the policy providing for the furnishing of proofs in case of loss it is further stipulated as follows: "If the interest of the assured be other than the entire and sole ownership, the names of the respective owners shall be set forth with their respective interests therein *certified* to by them. In the proofs of loss that were furnished to the defendant company after the fire, and that were subsequently, at the trial of the cause, admitted in evidence over the defendant's objection, we find the following statement sworn to by Edward Lewis and William C. Lewis: "The property insured belonged at the time of the fire to B. C. Lewis & Sons, a firm composed of George, Edward and William C. Lewis; and at the time of effecting the insurance it belonged to B. C. Lewis & Sons, a firm composed of George and Edward Lewis." After the receipt of this proof of loss by the defendant company, a correspondence by letter of considerable length was had between the in-

238      SUPREME COURT.

Hanover Fire Ins. Co. v. B. C. Lewis & Sons.—Opinion of Court.

surers and assured, which letters were subsequently
admitted in evidence over the defendant's objection.
In the first of these letters, dated May 22nd, 1885,
from the defendant to the plaintiffs, in which the re-
ceipt of the proofs of loss is acknowledged, no objec-
tion is raised to the form or sufficiency of the proofs
furnished, except that the plaintiffs are asked therein
for information as to the "nature and extent of Wil-
liam C. Lewis' interest in the present firm of B. C.
Lewis & Sons." To this the plaintiffs replied under
date of May 26th, 1885, "W. C. Lewis, as stated in
proof of loss, is a partner in our firm, having been ad-
mitted January 1st, 1883, with a fixed share of
profits." This does not seem to satisfy the defendant
company, as they again wrote on May 29th, 1885, to
the plaintiffs asking them to "state what share of the
'Glenwood' property was owned by William C. Lewis,
as a member of the firm, at the time of the fire." To
this the plaintiffs replied on June 2d, "W. C. Lewis
had no interest in the Glenwood property, except as
stated in our letter of 26th May." In none of this
correspondence is the objection urged that the expla-
nation of W. C. Lewis' connection with the property
should be under oath; and in none of this correspon-
dence is there any other objection or question raised
with reference to the proofs of loss, either as to its
form or substance. The plaintiffs in reply to the in-
quiries of the defendant in relation to this matter state
distinctly that W. C. Lewis had no interest in the
property, but was limited to a fixed interest in the

profits of the firm's business. What further information could have been reasonably desired or given on the subject, it is difficult for us to see. To have demanded more, presents the appearance on the part of the defendant of a desire to quibble at straws. It was an error very natural to be made by men not expert in the nice distinctions growing out of the ownership of partnership, properties, to state, as was done in these proofs of loss, that the incoming partner, William C. Lewis, owned an interest in the insured property; but when the matter is drawn pointedly to their attention, the true explanation is at once made showing that he in reality has no interest in the property of the firm as originally composed, but only a fixed interest in the profits of the business generally. In the light of the explanation given by Edward Lewis in his testimony as to the terms upon which William C. Lewis was admitted into the firm, we are of the opinion that he did not acquire any such interest in the property as would avoid the obligation of the defendant to pay the loss. In this case, according to the evidence of Edward Lewis, and it is nowhere contradicted, no written contract of partnership was gone into when William C. Lewis entered the firm; nothing was done, except to admit him to membership by a verbal agreement that he was to have a fixed interest only in the profits of the general business, with this testimony, we are of that opinion that he did not acquire any such interest in this property as would defeat the right of George and Edward Lewis to recover upon this policy. In

Lindley on Partnership, vol. 1, p. 329, it is said that "The only true method of determining as between the partners themselves, what belongs to the firm and what not, is to ascertain what agreement has been come to upon the subject. If there is no express agreement, attention must be paid to the source whence the property was obtained, the purpose for which it was acquired, and the mode in which it has been dealt with." To the same effect is Parsons on Partnership, sec. 366. Applying this test by getting from Edward Lewis on the stand the agreement between the partners here, the result is that William C. Lewis on entering the firm acquired no interest in its properties, but a prospective interest only in the profits of the business generally. Stumph vs. Bauer, 76 Ind., 157. We do not think there was any error in admitting in evidence the proofs of loss furnished to the defendant, nor in admitting the correspondence that passed in reference thereto between the defendant and the plaintiffs, nor in permitting Edward Lewis on the stand to testify fully as to the status of William C. Lewis in the firm. The correspondence was directly pertinent to, and explanatory of the only point in the proofs of loss to which the defendant excepted, and not being demanded under oath, we think the requisite of being verified by oath must be held to have been waived. Marthinson & White vs. North Brit. & Mer. Ins. Co., 64 Mich., 372; Washington Fire Ins. Co., vs. Kelly, 32 Md., 421; West, Morris & Gorrill v. Citizens Ins. Co., 27 Ohio St., 1; Ayers vs.

JUNE TERM, 1891. 241

Hanover Fire Ins. Co. v. B. C. Lewis & Sons.—Opinion of Court.

Hartford Fire Ins. Co., 17 Iowa, 176. The part of Edward Lewis' evidence objected to was directly pertinent to the same point, and we think was clearly admissible, it amplified and explained fully William C. Lewis' status toward the insured property, the only apparent subject of contention between the parties as to the sufficiency of the proofs of loss; which explanation and correction of the proofs of loss we think was proper at the trial and in accordance with law. Commercial Insurance Company of Chicago vs. Huckberger, 52 Ill., 464; Ætna Insurance Co. vs. Stevens, 48 Ill., 31; McMaster vs. President, etc., of Insurance Company of North America, 55 N. Y., 222; Hubbard & Spencer vs. Hartford Fire Insurance Co., 33 Iowa, 325; Connecticut Mutual Life Insurance Company vs. Scwenk, 94 U. S., 593; Maher vs. Hibernia Insurance Co., 67 N. Y., 288; Moseley vs. Vermont Mutual Fire Insurance Co., 55 Vt., 142; Willis vs. Germania & Hanover Fire Insurance Co.'s., 79 N. C., 285; May on Insurance, sec. 465; 2 Parsons on Contracts, p. 461. The cases cited by the defendant's counsel in support of their contention all involved personal property, where the incoming partner was admitted to full partnership in the assets of the former firm where those assets consisted entirely of personalty, and have no applicability to the question here.

The fifth assignment of error we think is well taken. The whereabouts of T. J. Rawls, or the question as to whether he was alive or dead, could not have any relevancy to any issue in this case; and we are at a loss

to understand the object of the enquiry as to his
whereabouts, unless it be, as is contended by defend-
ant's counsel, an effort to make admissible as evidence
at the trial an estimate of the items and cost of replac-
ing the destroyed property, purporting to have been
made by T. J. Rawls, deceased. Even for this pur-
pose we do not think the enquiry as to his whereabouts
was pertinent or proper, as the fact of his decease did
not render any estimate on the subject made by him
admissible evidence. Had he been alive his estimate,
to be proper evidence, would have to be verified by his
oath; and the fact of his decease did not render his un-
verified estimate, made while in life, any more compe-
tent as evidence than if the same had been offered dur-
ing his lifetime.

The sixth assignment of error is well taken, and is
fatal to the verdict and judgment in this cause. In-
corporated in the policy sued upon as one of the
covenants therein, is the following provision : "In
case differences shall arise touching any loss or dam-
age, after proof thereof has been received in due form,
the matter shall at the written request of either party
be submitted to arbitrators, indifferently chosen, whose
award in writing shall be binding on the parties as to
the *amount* of such loss or damage, but shall not de-
cide *the liabilities of the companies respectively under
this policy.*" In pursuance of this provision the in-
surers and insured, after the loss, entered into the fol-
lowing agreement in writing for submission of the sole

question of "amount" of loss to two builders or arbitrators: "New York Underwriters Agency, composed of the Germania and Hanover Fire Insurance Company of New York. Special agreement for submission to two builders. It is hereby agreed by B. C. Lewis & Sons, of the first part, and the Germania and Hanover Fire Insurance Companies, of the city of New York, of the second part, (each acting for itself,) that B. F. Langley and T. J. Rawls, together with a third party to be chosen by them, if necessary, shall appraise and estimate at the true cash value the damage by fire on the 2nd day of January, 1885, to the property belonging to B. C. Lewis & Sons, as specified below, which appraisement and estimate by them or any two of them in writing as to the amount of such loss or damage shall be binding on both parties; it being understood that this appointment is without reference to any other question or matters of difference within the terms and conditions of the insurance, and is of binding effect only so far as regards the actual cash value of, or damage to, such property covered by policy No. 20,195 of said companies, issued at the Tallahassee, Fla., agency. The property on which damage is to be estimated and appraised is the 2½ story frame building with shingle roof, situate about seven miles northeast from Tallahassee, known as the Glenwood property. And it is expressly understood and agreed, that said builders are to take into consideration the age, condi-

tion and location of said premises previous to the fire, and also the value of the walls, material, or any portion of said building saved; and after making an estimate of the cost of replacing said building, a proper deduction shall be made by them for the difference (if any) between the value of a new or replaced building and the one insured; said builders are hereby directed to exclude from the amount of damage any sum for previous depreciation from age, location, ordinary use or any cause whatever, and simply to arrive at the damage actually caused by said fire. Witness our hands at Tallahassee, Fla., this 10th day of April, 1885.

    (Signed)    B. C. LEWIS & SONS.

    (Signed)    GERMANIA & HANOVER FIRE INS. COS.,

               per CHAS. C. FLEMING, Special Agt."

Then follows the oath of the said two builders as follows:

         "DECLARATION OF BUILDERS.

State of Florida,    }
               } ss.
County of Leon.   }

We, the undersigned, do solemnly swear that we will act with strict impartiality in making an appraisement and estimate of the actual damage to the property of B. C. Lewis & Sons, insured by the Germania & Hanover Fire Insurance Companies of New York, agreeable to the foregoing appointment, and that we will return to said company a true, just and conscien-

JUNE TERM, 1891. 245

Hanover Fire Ins. Co. v. B. C. Lewis & Sons.—Opinion of Court.

tious appraisement and estimate of damage on the same, according to the best of our knowledge, skill and judgment. Witness our hands this 10th day of April, A. D. 1885.

(Signed)                                B. F. LANGLEY,

(Signed)                                T. J. RAWLS.

Subscribed and sworn before me this 11th day of April, A. D. 1885.

(Signed)               W. C. LEWIS, Notary Public."

Then follows the findings or award signed by one of said builders and an umpire alleged to have been selected by them, to-wit:

"AWARD OF BUILDERS.

To the Germania and Hanover Fire Insurance Companies of New York : Having carefully estimated and appraised the damage by fire to the property of B. C. Lewis & Sons, agreeably to the foregoing appointment, we hereby report that, after having taken into consideration the age, condition and location of the premises previous to the fire, and making proper deductions for the walls, materials and portions of building saved, we have appraised and determined the damage to be four thousand, one hundred and seventy-two 75-100 dollars ($4,172.75).

Witness our hands this 11th day of April, 1885.

(Signed)                                B. F. LANGLEY,

(Signed)                                J. M. WILSON."

This submission to arbitration and the award that followed was specifically set up as a special defense by

the fifth plea of the defendant. This plea was demurred to by the plaintiffs and the demurrer was overruled by the court, and the plea sustained as a valid defense; yet, afterwards, on the trial, when the defendant sought to substantiate their plea by introducing the agreement of submission and the award in evidence, its admission was refused by the court, unless it should also offer to introduce evidence that the amount awarded had been paid or tendered by the defendant to the plaintiffs; and this, too, after a replication to this plea had been held by the court to be bad, that contended for payment or tender of the amount awarded before the award could be available as a defense.

Ever since the decision in 1853 in the House of Lords by Coleridge, J., of Avery vs. Scott, 3 Exch. (8 Welsb., H. & G.), 499, it has been uniformly held in England and in this country, that provisions like this in a policy of insurance for the ascertainment and settlement of the amount of loss or damage by submission to arbitrators are proper, legal and binding on the parties, and do not fall within that class of arbitraments that undertake to oust the courts of their jurisdiction, and that are, therefore, obnoxious to the law. Wolf vs. Liverpool & London & Globe Ins. Co., 50 N. J., (Law), 453; Gauche vs. London & Lancashire Ins. Co., 4 Woods (U. S. C. C.), 102; Adams vs. So. Brit. & Natl. Fire & Marine Ins. Co., 70 Cal., 198; Trott vs. City Ins. Co., 1 Clifford (U. S. C. C.), 439; Zallee v. Laclede Mut. Fire and Marine Ins. Co.,

44 Mo., 530, in which it is held that such a submission is not, in the accepted legal sense of the term, a submission to arbitration, but merely an appraisal, and that it was not necessary to have the appraisers sworn. Elliott v. Royal Exch. Assurance Co, Law. Reports, 2 Exchequer Cases, 237; Howard vs. P. & A. R. R. Co., 24 Fla., 560, 5 South Rep., 356. The parties in this case, in pursuance of this valid and binding provision in the policy here sued on entered into a solemn written compact submitting the matter of the "amount" of the loss or damage to two arbitrators or appraisers of their own choosing, with power in them to choose a third as umpire in case of their failure to agree. The appraisers thus chosen have awarded or fixed the amount of the loss at $4,172.75. Why the assured are not bound by their agreement of submission, and this award that followed, we cannot comprehend from anything exhibited in the record. It is true that promptly after the rendition of the award they notified the insurers of their determination not to abide the same, but parties cannot thus arbitrarily rid themselves of the binding force and effect of their solemn contracts. By this award they were bound, and to the amount awarded were they limited in their right to recover, unless they could have shown under proper pleading such fraud or other matter as would in law have avoided the same. Burchell vs. Marsh, Freer & Arbuckle, 17 Howard, 344. In the record here there is not one scintilla of evidence even tending or attempting to show either irregularity, un-

fairness or fraud in the procurement of this sub-
mission or in its conduct, or result, and we must con-
sequently hold that, in the absence of any such cir-
cumstances to avoid it, it is binding as to the extent
of the loss on the assured as well as upon the insurers.
Such submission does not come within the catalogue of
arbitraments provided for in our statute, McClellan's
Digest, p. 105, *et seq.*, and need not have been con-
ducted in accordance with the statute. Neither was
it necessary that the award of the appraisers touching
such special question submitted to them should have
been accepted or acted upon in any way by the respec-
tive parties; neither was the agreement to submit such
special question to arbitration an unilateral under-
taking binding only on one of the parties thereto;
because upon the face of that covenant in the policy
sued upon that makes provision for the appraisement
of the amount of the loss, and also in the subsequent
agreement submitting said special question to two
builders, it is expressly stipulated that the findings of
such arbitrators as to the *amount* of the damage should
be binding on both parties. Hence, if, after such as-
certainment of the *amount* of the loss, it should be
found that the insurers were *legally liable* for such
loss they at once became bound for the "amount" as-
certained and awarded by such arbitrators. The fact
that the amount thus fixed by the arbitrators was not
paid or tendered, has nothing to do with the question
whatever. Both in the policy and in the subsequent
submission to the appraisers, the liability of the insu-

surers was expressly excepted and reserved from the consideration of said arbitrators. The naked question submitted to them was: What is the amount of the damage here? Whether the insurers were legally liable or obligated to pay that loss, was not submitted to them and did not enter into their sphere of enquiry, nor into their award; and depended upon the settlement of divers other independent circumstances and conditions growing out of the contract between the parties. As before stated, the refusal of the court below to admit in evidence this agreement for submission to arbitration and the resultant award, under the objection apparently urged, was fatally erroneous. By that award, until avoided in some legally recognized way, each one of the underwriting companies, in the event of their legal liability for the loss, was obligated for one-half part of the amount thereof, ($4,172.75.) But one of the companies is sued here, and the verdict against it is for $3,000, which we find to be considerably in excess of one half part of the amount of the award, by which the parties were bound, and to which they were limited in a recovery.

The seventh assignment of error is the giving of each and every of the instructions given by the court to the jury of the court's own motion, and those requested by the plaintiffs, but in the briefs of counsel this assignment seems to have been abandoned, except as to the instruction lettered "E," which is as follows: "The letter of the defendant acknowledging receipt of proofs of loss as of May 20th, 1885. The interest then

in the event of your finding for the plaintiffs begins to run from July 20th, 1885." This instruction we think was erroneous; it dealt too strongly with the facts, and supplied in reality a fact itself, that is, the exact date from which interest began to accumulate in the event of a recovery by the plaintiffs. The jury are the sole judges of facts, and they alone determine the establishment or non-establishment of every material fact in a cause. Had this instruction directed them that the plaintiffs were entitled to interest, in the event of their recovering, upon the amount of the recovery from a date sixty days after the furnishing of proofs of loss, and left it to the jury to determine whether proofs of loss had been furnished or not, and when, it would have been a proper charge. But in view of the absence of any conflict of evidence as to the time when the defendant received the proofs of loss, we do not think the giving of this charge could be held to be reversible error. The other instructions given and excepted to, counsel have ignored in their briefs, and consequently we will treat them as abandoned.

The eighth assignment of error is the refusal of the court to give nine instructions requested by the defendant. After what has been said upon the various question arising in this case we do not deem it necessary to discuss this assignment further than to say that the court below upon another trial can conform its rulings upon the questions raised by said refused

instructions to the views and opinions herein expressed.

The ninth assignment of error, the refusal to grant a new trial, it follows from what has been said, must be sustained. A new trial should have been granted.

The judgment of the court below is reversed, with instructions that a new trial be awarded.