W. R. Emerson & Co., Appellants, vs. J. C. Gainey, Appellee.

1. In an action under the mechanics lien law (Chapter 3747 Laws of Florida), the affidavit of the plaintiff described the property upon which he claimed a lien, as being a steam saw mill located at a town or place called Emerson, on the S., F. & W. railroad, fourteen miles south of Live Oak, Suwannee County, Florida: *Held*, to sufficiently describe the property, as the plaintiff claimed no lien upon the land.

2. It is alleged that the jury allowed the plaintiff pay for the use of certain tools used in constructing the mill to which he was not, under the statute, entitled, but the evidence failing to show the amount, if any, allowed for the use of tools, no cause for reversal is shown.

3. The proceedings prescribed by the statute for the enforcement of the lien law are purely legal, and confer no equity powers upon the Court, and a proceeding at law under the statute to enforce a lien, is not unconstitutional.

4. The suit was commenced against the defendants as partners, but the *præcipe* and writ were amended describing them as late partners, but the amendment was not carried into the affidavit (which takes the place of a declaration) which describes the defendants as partners, but there was no objection to this variance in the Court below, and the objection comes too late when first made in the Appellate Court.

Appeal from the Circuit Court for Suwannee County.

The facts of the case are stated in the opinion.

*J. S. White*, for appellant.

Motion in arrest should have been sustained because:

1st. Two causes of action are united in one count of declaration (the affidavit) to-wit: cause of action for labor done under Section 2, act June 3, 1887, and for material furnished under Section 4, same act.

The necessity of particularity and certainty in this class of pleading is readily seen when the words of each section

"shall have a lien to the extent of the value of the labor performed—or the extent of the value of the material (tools) furnished" are considered. See Sections 2 and 4, act 1887.

Declaration does not describe the lot or lots of land, nor sufficiently locate the property on which lien is claimed.

This being an extraordinary proceeding the statute must be strictly followed.

Section 16, act June 3, 1887, provides the requisites of the affidavit. Chief among which is the description of the lot of land on which the building or other structure is situated, on which the lien is claimed under Section 2 or 4.

The necessity of a strict compliance with the requirement is apparent when we come to consider the rights and protection of the purchaser at the sale and the requisities of the judgment on this suit.

Affidavit does not set forth the value of the tools furnished, in an issuable manner. Section 4, act June 3, 1887.

As to the 4th, 5th and 6th and 7th grounds of motion in arrest we submit that it is peculiarly the province of a Court of Chancery to declare and establish liens by decrees.

In all cases under our jurisprudence when the judgment of a Court of common law, operates as a lien it is purely by force of statute and not by virtue of anything in the judgment—the contrary, however, is true of decrees in Chancery.

The distinctive features and function of judges of Circuit Courts as Chancellors and Judges of Courts of Common Law are recognized by our institutions. See Section 11, Article V, Constitution 1885.

In cause at bar, Gainey seeks by judgment of Common Law Court to decree a lien that is in its nature equitable and peculiarly within the province of a Court of equity to adjudicate and declare.

The allegation that the Legislature has established this statutory method of relief is met by the fact that the limitation of the Constitution restricts innovation of this nature by the Legislature.

> See Section 20, Article III, Constitution 1885.
> Sections 11 and 35, Article V, Constitution 1885.

The judgment herein not only establishes the indebtedness upon the issue, but declares a lien and provides for its discharge—a perfect decree in chancery in substance. See judgment record p. 15.

The 8th ground of motion has been treated.

The 9th ground:

By reference to affidavit Ganey commenced work on mill building in erection thereof June 1, 1887, and completed that work August 15, 1887.

The affidavit herein was filed (or sworn to) April, 17, 1888, eight months and two days after the labor of construction or erecting the mill, and for which tools were furnished, was done and from the last day.

Such right of action was barred under the act of June 3, 1887. See Section 17, act June 3, 1887.

As to constitutionality of the act of June 3, 1887, known as the Knights of Labor Lien Law.

We submit:

That the subject of the act is not briefly or otherwise expressed in the title of the act. The object of the act being much broader than the title indicates. See title act, June 3, 1887.

> See Section 16, Article III, Constitution 1885.

The act is intended to establish and fix liens. The title indicates merely a protection to certain classes of individuals.

The act goes further and provides a special judiciary, and special judicial proceeding in causes arising under this act. A judge, jury and open Court. Sections 16, 18, 19-20, act June 3, 1887.

Section 8, Article V, Constitution 1885, provides that there shall be held two terms of Circuit Court in each county each year, and may hold special terms.

Section 16, act June 3, 1887, provides that "the Courts of this State shall always be open to hear and determine causes arising under this act."

Section 35, Article V, Constitution 1885, provides "no Courts other than those herein specified shall be established in this State.

Now the tenor and effect of this legislation is to establish in favor of material men and laborers a class of courts a judicial system for the declaration and establishment of their rights different from that general judiciary provided for the regular administration of justice.

If two terms of Circuit Court are to be held in each county pursuant to Constitution then the Circuit Court cannot be open at all times pursuant to this act in each county to determine causes arising under this act.

Aside from these impossibilities, incongruities and monstrous proposals of this unjust law the Constitution of 1885 provides in Section 20, Article III, that the Legislature shall not pass special or local laws  *  *  regulating the jurisdiction or duties of any class of officers except municipal officers  *  *  *  regulating the practice of Courts of Justice  *  *  *  summoning and empanelling grand and petit jurors. See Section 20, Article III, Constitution 1885.

The Legislature by this act of June 3, 1887, provides a special method of procedure for this class of cases. Peculiar 1st, in the instant return of process; 2nd, the immediate

trial of cause; 3rd, the issue raised by the act; 4th, the empanelling of a jury from the bystanders or county at large debarring the defendant of the protection of the jury box; 5th, regulating the duties of the officers in this special class of cases, and specially regulating the practice of the Courts of Justice in this particular class of litigation. Sections 16, 18, 19, 20, 21-22.

We think the motion in arrest of judgment should have been granted.

*W. S. Hamby and M. E. Broome*, for appellee.

MITCHELL, J.: Gainey, the appellee, commenced suit in the Circuit Court for the enforcement of a lien under the mechanic's lien law of June 3, 1887, Chapter 3747 Laws of Florida. The *præcipe* for summons *ad respondendum* was filed April 17, 1888. The writ was made returnable instanter, and it was issued, executed and returned the same day. And on the same day the plaintiff filed his affidavit, which, under the statute, is the declaration in such proceedings.

On the 19th day of the same month, the Circuit Court being put in motion by the action of the plaintiff in filing the *præcipe*, and the issuing and execution of the writ, a jury was summoned, we assume from bystanders, and the cause was then ready for trial. At this stage the defendants, by counsel, entered a special appearance, for the purpose of moving to quash the proceedings. The motion was refused, and the defendants then, *by permission of the Court*, filed their pleas; the plaintiff joined issue thereon, and afterwards by permission of the Court, amended his pleadings; the cause then proceeded to trial on said 19th day of April, and resulted in a verdict in favor of the plaintiff. The defendants moved for a new trial and in arrest of judgment, which

motions were overruled, and the defendants appealed, and have assigned the following errors: 1. The Court below erred in overruling defendant's motion for new trial; 2. In overruling defendant's motion in arrest of judgment; 3. In rendering judgment for attorney's fees for plaintiff.

The grounds of the motion for new trial are, that the verdict was against the evidence and the charge of the Court, but there is nothing in the record to show what the evidence or the charge of the Court was, and consequently we can consider no question sought to be raised by the motion.

The first ground of the motion for the arrest of the judgment is, that "the plaintiff by his affidavit to enforce the lien claimed, does not describe and sufficiently locate the property upon which he claims a lien for work."

The first section of the above act provides: "That mechanics, laborers and all other persons who shall perform any labor upon or in the construction of any building, or other work or structure, shall have a lien of superior dignity to all others upon the building, work or structure upon which they may have worked in the construction or repair thereof, and also upon the interest of the owner in the lot or land upon which such building, work or structure stands, to the extent of the value of any labor done by them." * * The plaintiff claimed a lien upon a steam saw mill, the property of the defendants, located at a place or town called Emerson, on the Savannah, Florida and Western Railroad, fourteen miles south of Live Oak, in the County of Suwannee, and State of Florida, but claimed no lien upon the land upon which the mill was located, and hence, in our opinion, it was not necessary for the affidavit to describe the land or lot upon which the mill stood by metes and bounds, but it would have been otherwise had he claimed a lien upon the land as well as the building.

The second ground of the motion for the arrest of the judgment is, "because the affidavit of said plaintiff does not allege and set forth in an issuable form the amount claimed, the kind of work done, and what property to which the lien claimed attaches." Now, the affidavit, it is true, might have been more specific as to the property upon which the lien was claimed, but there is nothing in the case to show that the defendants before going to trial, in fact before judgment, raised any objection as to the affidavit, and in the absence of such objection at the proper time, we cannot consider the question as to its sufficiency. The record does, however, show that before going to trial defendants moved to quash the proceedings, or rather, that they entered a special appearance for the purpose of making such motion, but the record is silent as to whether or not the motion was made, but if made, there is nothing to show the grounds of the motion, and in the absence of such showing, upon the ground that every fair intendment is in favor of the correctness of the ruling of the Court, we assume that the grounds of the motion to quash—if any— were not tenable.

The third ground of the motion for the arrest of the judgment is, "because said plaintiff by his affidavit sets up claims for the use of his tools as part of his compensation, and for which a lien is claimed." As to whether the plaintiff received any pay for the use of his tools or not, we are not able to learn from the record, but it may be safely assumed, we think, that no error was committed in reference to any pay the plaintiff may or may not have received for the use of his tools. If, however, there was error in this respect the defendants have failed to point it out.

The fourth ground of the motion for the arrest of the judgment is, "because plaintiff seeks in an equitable pro-

ceeding to enforce a common law right;" the fifth is, "because the plaintiff seeks an equitable right in a Court of common law ;" the sixth is, "because this Court cannot render a judgment for which plaintiff seeks by his said affidavit." These several grounds may be considered together, as they practically raised but one and the same question, and in considering this question we do not agree with counsel for the defendants. The mode of procedure prescribed by the Legislature for the enforcement of the mechanic's lien law is a purely legal proceeding, and confers no equity powers upon the trial Court in such cases, and is, therefore, free from the objectionable features insisted upon by the defendants.

The seventh ground of the motion for the arrest of the judgment is, "because the law under which the plaintiff seeks to enforce his lien is unconstitutional, in this, that it attempts to confer upon a Court of common law jurisdiction, the powers of a Court of equity." The act under consideration, as before stated, confers no such power as contended for by defendants, and hence their contention as to the act being unconstitutional for the reasons insisted upon, is not tenable. And what we have said as to the seventh ground of the motion applies also to the eighth, because it seeks to raise the same question that is raised by the seventh ground.

The ninth and last ground of the motion is, that the plaintiff did not commence his action within the time prescribed by the statute, but this ground is not well taken, because the record shows clearly that the suit was commenced in six months (the time prescribed by the statute for bringing the suit) after the completion of the work by the plaintiff for the defendants.

It is insisted that the Court below erred in not quashing

the proceedings on the ground of variance between the *præcipe*, affidavit and writ. In Robinson vs. Hartridge, 13 Fla., 501, the Court say: " Having disposed of these objections, we reach the errors assigned in this case. The first is, the Court erred in giving judgment upon the verdict of the jury, the declaration being in trover and the writ in assumpsit, and that the declaration is defective for want of material allegations. The defendant in the Court below, without making any objection to this total variance between the writ and declaration, pleads to the changed form of action, goes to trial, and this objection is made for the first time in this Court. The objection comes too late. * * * Under the provision of the act of November 23, 1828, (Thompson's Dig., 351), 'after verdict, the judgment cannot be stayed or reversed ' for this variance. It is thus seen that this variance amounts to but little when urged in the Circuit Court before verdict, and amounts to nothing when urged after verdict, and that it is no ground for a reversal of the judgment."

In the suit at bar the case stood originally against the defendants as partners in the milling business, but the *præcipe* and writ were amended and the case then stood against the defendants individually, describing them as late partners, etc., but this amendment was not carried into the affidavit which describes the defendants as partners, and this creates the variance complained of by the defendants. There is nothing in the record to show that the defendants objected to this variance in the Court below, but even if they did, under the decision in 13 Fla., *supra*, there was no error in overruling the objection. This objection is not incorporated in the record, and even if there could be any objection on account of this variance it should have been taken advantage of in the Court below. It is too late to

raise that question for the first time in this Court.    There was no error in the Court below  allowing the statutory fee of twenty-five dollars.

This disposes of all the questions raised in the case. However, as the defendants have assailed the constitutionality of the act under consideration, we will remark that there is an interesting and important constitutional question involved in this act.    The question is, do not the summary proceedings authorized against a defendant, deprive him of his constitutional right to be tried "by due process of law."    This question was not raised in this case, and we express no opinion upon it.

The judgment is affirmed.