JAMES M. WILCOX, APPELLANT, VS. THOMAS STEPHENSON, APPELLEE.

BUILDING CONTRACTS—PLEADING.

1. A declaration on a written contract for the construction of a building, that sets out the contract *in extenso*, and that alleges generally "that the plaintiff performed each and every requirement by him contracted as set forth in the contract," is under § 59, p. 826, McClellan's Digest, (Rev. Stat., § 1045,) not subject to demurrer because it fails to allege specially the performance of some particular condition precedent arising out of such contract. The general allegation of performance above quoted being sufficient, under this statute, to cover all conditions in the contract.

2. A motion to "strike out" evidence that has been introduced in a cause, must be predicated upon some feature of irrelevancy, incompetency, legal inadmissibility, or impertinency in the evidence itself that is struck at. Where evidence has been introduced for a plaintiff that in itself is pertinent, relevant, legal and proper so far as it goes toward making out the plaintiff's case, but which, in the conception of the opposite party, falls short, for the want of proof of other necessary facts, of making out the plaintiff's case, the proper practice is either to get an instruction from the court to the jury to the effect that no recovery can be had without proof of the missing facts, or else, by a demurrer to the evidence.

3. Provisions in a building contract to the effect that the work shall be under the supervision and direction of a third person as architect, and that all work shall be subject to his examination and satisfaction, that what is paid for is in accordance with the plans and specifications, and that all payments were to be made upon estimates fixed by the architect, and that no money shall be due and payable unless certified to be due by the architect, are entirely valid and binding on the contracting parties, and they will be held strictly to its terms unless some legally recognizable excuse is presented for failure to comply therewith; and when such architect gives to the contracting builder a certificate showing that he is satisfied that the materials and work are in compliance with the contract, such certificate is binding and conclusive upon the owner, unless he can show fraud in its procurement, or such gross mistakes therein as would amount to fraud were it permitted to prevail; and he will not be allowed to go behind such certificate, in a suit by the builder, to get the benefit of defects and shortcomings in the work and materials included within such certificate, in reduction of the contract price.

Appeal from the Circuit Court for Orange county.

The facts of the case are stated in the opinion of the court.

*Massey & Wilcox* for Appellant.

*W. R. Anno* for the Appellee.

TAYLOR, J.:

Thomas Stephenson, the appellee, sued the appellant, James M. Wilcox, in the Circuit Court of Orange county in assumpsit for an alleged balance of $2,137.90 due him upon a building contract, whereby the plaintiff agreed to construct a building for the defendant known as the "West End Hotel," furnishing all the materials therefor, and whereby the defendant agreed to pay to the plaintiff the aggregate sum of $14,650. The trial resulted in a verdict and judgment for the plaintiff in the sum of $1,516. Motion for new trial being refused, the defendant brings the case here upon appeal.

The first assignment of error is the overruling by the court below of the defendant's demurrer to the plaintiff's fourth amended declaration.

The amended declaration questioned by this demurrer contained a special count upon the written contract entered into by the parties, setting forth the contract and a supplemental contract *in extenso* as part thereof, and contained also a general count in *quantum meruit* and *quantum valebant* for work

done and performed and materials for the same furnished by the plaintiff. This contract provided that the plaintiff as contractor should well and properly erect the "West End Hotel," and out-building and water cistern, and that on or before the 15th of November, 1885, the said buildings should be in all respects complete and finished in a perfect and workmanlike manner, and in every way ready to be furnished for use, and that all of said agreements should be performed to the satisfaction and under the direction and personal superintendence of the architect, one Charles K. Needham, according to plans and specifications made by him that were also part of the contract. Payments were to be made to the plaintiff at stated periods as the work reached specified stages in its erection. The contract contained the further provision that "any and all payments shall be subject to the architect's examination and satisfaction that what is paid for is in accordance with the plans and specifications;" and all payments were to be made upon estimates fixed by the architect. A reservation of 15 *per cent.* of all estimates for payments was provided for until the final payment, such final payment being "reserved until to the satisfaction of the architect such payment can be made leaving the premises liable to no liens." It was further provided "that no money shall be due and payable unless so certified by the architect." There was a further proviso: "That should the contractor at any time during the progress of the work refuse, or be unable through neglect, careless-

ness, sickness or other disability, to comply with the provisions of the contract, then the defendant, his legal representatives or agent are hereby given full right and power, ten days after such refusal or disability shall be made known to them, to enter upon and take possession of the premises, three day's written notice of their intention to do so having been previously given to the contractor or his legal representatives; and to provide all materials and labor requisite for completing what has been left undone of the specifications, cost thereof being deducted from the $14,-000." There was a further proviso that "should the contractor fail to complete the work by the time specified, through negligence or failure to use diligence, or any other fault on his part, he shall be chargeable with the sum of ten dollars per day for every day the building is delayed over and above the time designated for its completion, and this sum shall be deducted from the payment or payments yet to be made; but if the completion of the work is delayed through any unforeseen circumstances against which the contractor could not guard, such penalty shall not accrue." There are other provisions in the contract sued upon, but those quoted are all that need be noticed here. The declaration contained the averment also, following immediately after the contract and supplement thereto: "That the plaintiff performed each and every requirement by him contracted as set forth in the original and supplemental contracts." The objection to this declaration urged by the defendant's demurrer

thereto, and here also in argument, is, that it did not aver any certificate of the architect that the money sued for was due and payable. The contention is that as the contract between the parties contained the provision: "That no money shall be due and payable unless so certified by the architect," that such certificate from the architect was a condition precedent to the right of the plaintiff to claim or sue for any of the contract money, and that the precedent procurement of such certificate should have been specifically alleged in the declaration. There can be no doubt that provisions like the one under consideration incorporated into contracts for the erection of buildings and other works and structures are fully recognized by the courts as being proper, and entirely valid and binding on the contracting parties ; and that they will be held strictly to its terms unless some legally recognizable excuse is presented for the failure to comply therewith. Howard vs. Pensacola & Atlantic R. R. Co., 24 Fla., 560, 5 South. Rep., 356; Finegan & Co. vs. L'Engle & Son, 8 Fla., 413; Hanover Fire Insurance Co. vs. Lewis, 28 Fla., 209, 10 South. Rep., 297. But, because compliance with such a provision is, unless legally excused, a condition precedent to the party's right to sue upon the contract, furnishes no reason, under the liberal statutes regulating pleadings in this State, why performance of such condition precedent should be specifically and specially averred in the declaration. On the contrary, our statute (McClellan's Digest, sec. 59, p.

826, Rev. Stat., sec. 1045) provides that: "It shall be lawful for the plaintiff or defendant in any action to aver performance of condition precedent *generally*, and the opposite party shall not deny such averment generally, but shall specify in his pleading the condition or conditions precedent, the performance of which he intends to contest." The plaintiff has conformed his pleading to this provision of our statute sufficiently as to every condition precedent in the contract, we think, when in his declaration he alleged that "he had performed each and every requirement by him contracted as set forth in the said original and supplemental contracts." It is contended for the appellant (defendant) that this condition precedent in the contract was one that was to be performed *by the architect*, (*viz:* the furnishing of a certificate,) and not by the contractor, and that the general averment in the declaration that the *contractor plaintiff* had performed all things required *of him* by the contract, did not cover something that was to be performed by the architect. This contention we think is a strained construction of the instrument and its provisions. The province of the plaintiff, when he came to demand or sue for anything under this contract, according to our construction of it, was to show that he had *obtained* the certificate provided for from the architect, and not that the architect had performed his part by *furnishing* it; or else it was incumbent upon the plaintiff to

exhibit some legal reason or excuse for his omission or inability to obtain it. The only function that the plaintiff had to perform, so far as the architect's certificate was concerned, was a passive one, that simply of obtaining or being possessed of it. There was no error in overruling the demurrer to the declaration mentioned.

The second assignment of error is abandoned.

At the trial after proving and putting in evidence the original and supplemental contracts and specifications, the plaintiff testified as follows: "I performed the work according to the plans and specifications with certain exceptions made by the architect. A supplemental contract was made, the dining room was enlarged and porch was lengthened out. The changes were provided for in the supplemental contract. I did also extra work amounting to $80.55. I furnished throughout all timber in every respect according to the specifications. The architect was there all the time except a month. Work was accepted by him. Architect at no time refused to accept work. If he suggested alterations, I altered the work accordingly. The building was not completed within the time specified because a chimney settled. There was a wash-out on the F. R. & N. road, which detained the painter's materials. There was a very serious settlement under a chimney in another part of the building, owing to a gopher hole, which detained me from some three, four or five weeks, and that was the real cause of delay.

The ground sunk on account of the weight of chimney, and carried the building with it. The understanding was that the building was to be free of the chimneys; the architect said that was a good suggestion, but it was not his idea. The brick pier next to the chimney went also; there was nothing to indicate any fault in the ground; the settlement was not due to any carelessness. The accident delayed from four to five weeks, trussing up and all that kind of thing. It cost me nearly $500. The upper part of the chimney was taken down. When the time expired, according to contract, the defendant allowed himself the privilege to take it out of my hands, and finished it himself. When he took possession, the amount of work left to be done I could have completed for about $40. The defendant owes me $12,565.65 less the amounts credited in the declaration—that is, he owes me about $2,100. The chimney that caused most delay was not a corner chimney; it was on south side of main building in the west wall of the parlor. I substantially completed the contract with the exception of about $40 of value. Mr. Needham, the architect, made estimates twice a month, which were allowed and paid. I think the 85 *per cent*. on the seventh estimate was paid. The brick account was agreed upon. Two estimates (the eighth and ninth) were made and paid after the seventh. Mr. Needham never signified any disapproval after the ninth estimate; he neither approved nor disapproved; he did not give me a certificate that the balance was due. With this evidence the plain-

tiff rested his case. The defendant then moved the court to strike out all the testimony of the plaintiff, because, "1st, the plaintiff has not shown that he performed his work to the satisfaction of the architect, and, in fact, that he has shown that the architect did not approve his work; 2nd, because the plaintiff's testimony has shown that the architect did not certify the amount claimed in this suit to be due." This motion was overruled and the ruling excepted to, and is assigned as the third error.

There was no error in this ruling. Motions to strike out evidence that has been introduced in a cause, as we understand the practice, must be predicated upon some feature of irrelevancy, incompetency, legal inadmissibility, or impertinency in the evidence itself that is struck at. None of these are urged against this evidence by this motion, and could not have been, because it is open to none of these objections, being entirely relevant to the issue, and competent in every respect as far as it went towards sustaining the plaintiff's claim; but the motion was predicated solely upon the ground that, though entirely proper, relevant and pertinent so far as it went, yet it did not go far enough to warrant a recovery; that another fact should have been proven in addition thereto, *viz*: that the work was performed to the satisfaction of the architect, and that the architect had certified that the amount claimed was due. When the plaintiff rested his case upon testimony relevant, pertinent and proper so far as it went, but which, in the conception of the defendant,

was insufficient to warrant the recovery claimed be-
cause of the absence of proof of other facts upon
other issues necessary to be proved before recovery
could legally be had, the proper way to have availed
himself of such defect was to have requested an in-
struction from the court to the jury to the effect that
unless the unproved fact contended for was proven,
then under the law the plaintiff could not recover ; or,
he might also have availed himself of the defect by
demurring to the evidence.

When the architect, Charles K. Needham, was on
the stand as the defendant's witness, an *ex parte* writ-
ten report made by him *after the plaintiff had been
ejected* from the work by the defendant, and ad-
dressed to the defendant, was offered in evidence ; in
which report divers defects were enumerated at great
length and detail, both in the character and quality of
the workmanship, and in the materials used in and
about the buildings. On the plaintiff's objection the
court refused to permit this report to be introduced in
evidence, and this ruling is assigned as the fourth
error. There was no error in this ruling. The report
offered was a written assertion of facts made *ex parte*
to the defendant by the party then on the stand as a
witness for the defendant, and if the facts set forth
therein were true, pertinent and properly admissible,
they could and should have been introduced in the
form of sworn oral testimony from the lips of the wit-
ness, or in the form of depositions in anwer to inter-
rogatories, put under the authority of a commission,
after opportunity to cross them had been afforded.

The fifth and sixth assignments of error are the re-
fusal of the court to permit the defendant's witness,
Charles K. Needham, the architect mentioned in the
contract sued on, to testify to defects in the work and
material that existed at the time of the *seventh* esti-
mate made by the architect.

In the contract it is further provided that "when
the hotel building shall have been so far completed as
in the customary progress of building to have received
the first coat of plastering, six'weeks shall be allowed
it in which to settle, etc., and when the first coat of
plastering has been properly put on as aforesaid, and
other requisites of the specifications in regard to this
stage of the operations have been fully complied with,
the party of the second part contracts to pay, or cause
to be paid to the party of the first part the sum of ten
thousand three hundred dollars including previous
payments; and thereafter correct estimates shall be
made by the architect as before, the final payment
being reserved until to the satisfaction of the architect
such payment can be made leaving the premises
liable to no lien." The architect, as defendant's wit-
ness, testified "that estimates were made *according to
the contract*, and paid up to and including the ninth
estimate; and that the seventh estimate was
the estimate made when the building was stand-
ing to settle after the coat of rough plaster, at
the time when the plaintiff was to receive a gross sum
under the contract of $10,300. The idea was that this

sum was to pay the plaintiff in full up to that time,
and that he should not ·be obliged to wait for his 15
*per cent.* on the previous estimates.'' The contract
between these parties provided that the materials used
and the work performed should be to the satisfaction
of this architect, and *if satisfied* he made an estimate
or certificate of the amount of the work and of his sat-
isfaction therewith, which estimates or certificates by
the architect, were the warrants or vouchers that
governed the defendant in making his periodical pay-
ments.    This provision in the contract for supervision
by the architect of the work done, and for adjudication
by him that when done it was in accordance with the
contract, as we have seen, is legally binding upon
*both* parties to the contract ; and when the architect,
under its provisions, certifies that the work or any
stipulated portion of it has been done to his satisfac-
tion and in compliance with the contract, such certifi-
cate as to the work included therein is conclusive
upon the owner, unless he can avoid it by showing
fraud or collusion in its procurement, or such gross
misapprehension or mistake as would amount to fraud
to permit it to prevail.    It appears from this evidence
of the architect that when the building had reached
that advanced stage toward its completion that it had
received its first coat of interior plastering, he *accord-
ing to the terms of the contract*, made the seventh es-
timate, or certificate, and that upon it the $10,300 was
paid, which payment included the 15 *per cent.* held in
reserve from all prior payments.    There was no effort

made to show that this seventh estimate, or certificate, was made or given by the architect with any reservations or conditions relative to the ratification or completion of any work included therein, and that was thereby certified to be in compliance with the contract; neither was there any effort or offer to show that such certificate was obtained by fraud, or that any misapprehension or mistake had occurred therein. There is no provision in the contract that reserves to the defendant the right to go behind or to open up or question these intermediate or periodical estimates, certificates or findings by the architect, that the work and materials up to the time they were made were to his satisfaction, and, therefor, in full compliance, up to that period, with the terms of the contract. Under this evidence, therefore, and in the absence of fraud, or such mistake as would amount to fraud, when this architect made this seventh estimate and certificate, including therein all work and material to a point in the progress of the building when it had received its first coat of interior plastering, and the defendant upon that certificate made the payment then provided for, we think that under the contract and evidence herein such certificate was tantamount to an adjudication or final settlement between the parties that everything back of it and included within it was free from defects or objections, and in full compliance with the stipulations called for by their contract. To have permitted this architect in his testimony as a witness to go behind his own estimate and certificate as to his satisfaction with the work and materials preceding it,

and that were included within it, without any wrong doing on the part of the plaintiff, or any gross mistake in the procurement thereof, would have been to allow him to stultify himself by asserting under oath that what he had already certified to as the trusted arbiter between the parties was false, and would have been an ignorement of the mutual obligations resting upon the parties respectively. There was no error in this ruling.

The seventh assignment of error is the refusal of the court to permit the architect witness, Charles K. Needham, to reply to the following question: "What would it cost to make the building conform to the contracts, plans and specifications?" This question, we think, would have been proper had it been so framed as to limit and confine the reply of the witness to the work and materials coming subsequent to the seventh estimate and certificate made by him as the defendant's architect. For all work and materials preceding such estimate and certificate, and included therein, we have seen that under the contract, the doors were closed to any inquiry or objection. The objection to the question is that it was too broad, covering the entire building, and including within its scope work and material that had already been passed upon and accepted by the terms of the contract as being in satisfactory compliance therewith.

The eigth assignment of error has been abandoned.

The ninth assignment of error is the giving of the following charge to the jury: "If the jury believe

from the evidence that the plaintiff fulfilled his contract according to the plans and specifications up to the time the defendant discharged him and took possession of the West End Hotel, you will find a verdict for the plaintiff, provided he has not been paid for his work up to that date; and in assessing his damage you will deduct from the contract price $10 per day from the time he contracted to finish, until the defendant took possession, if he were not Providentially prevented, as well as all sums of money which the defendant paid the plaintiff on said contract, as well as all sums which he has been compelled to pay on this contract by the order or judgment of any court, as well as all such sums as were necessary to finish the contract after defendant took possession, adding to whatever balance, if any, due the plaintiff, interest at the rate of eight *per cent. per annum* from December 1st, 1885." Referring to the written contract between the parties we find the following provision, already quoted: "Should the party of the first part at any time during the progress of the work refuse, or be unable through *neglect, carelessness, sickness*, or *other disability*, to comply with the provisions of this contract, then the party of the second part, his legal representatives or agent, are hereby given full right and power, ten days after such *refusal* or *disability* shall be made known to them, to enter upon and take possession of the premises, three days' written notice of their intention so to do having been previously given to the said party of the first part or his legal representatives; and to provide all material and labor requisite

for completing what has been left undone of the specifications, cost thereof being deducted from the $14,-000 above mentioned." Following the above provision in the contract comes this further stipulation: "It is also agreed that should the first party fail to complete his work by the time specified, through neglect or failure on his part, he shall be chargeable with the sum of ten dollars per day for every day the building is delayed over and above the time designated for its completion, and this sum shall be deducted from the payment or payments yet to be made." In the evidence of the plaintiff it is made to appear that at about the time he had *substantially* completed these buildings, or, as he expresses it, when he had carried them to a point where about $40 would have completed everything necessary to a full compliance with his contract, the defendant dispossessed and ousted him from the work, and availed himself of the privilege of completing it himself. James M. Wilcox, Jr., son of the defendant, and as the defendant's witness, swears that after the beginning of October, 1885, he was agent in Orlando for the defendant in reference to the West End Hotel. That "finding that the plaintiff did not *progress* satisfactorily with his work, he caused a notice to be served upon him, taking the work out of his hands *under the contract*." And the following is the notice so served:

ORLANDO, FLA., Nov. 27th, 1885, 9 A. M.
*To Thomas Stephenson, Builder:*

DEAR SIR: Notwithstanding your many statements that the West End Hotel would be completed

at the time specified in the contract, I find that at this late date it lacks a good deal of being completed. On account of the unreasonable delay, I find myself compelled to enforce the terms of the contract to their full extent. Under one of the provisions of the contract, therefore, I hereby notify you that at the expiration of three days from this date, I shall enter upon and take possession of the premises, and *carry out the further express provisions of the contract in this connection.*

Yours truly,

JAMES M. WILCOX,

Per James M. Wilcox, Jr., Agent.

The ground upon which the defendant, through his agent, seems to have rested his right thus to eject the plaintiff from the work, was that the plaintiff was not making satisfactory *progress* with the work, and because he had not completed it at the *date* fixed for its completion, while the contract between the parties, according to our interpretation of it, gave to the defendant this right of eviction only in case of the plaintiff's *refusal* or *disability*, from sickness or otherwise, to carry it out. We therefore think that the eviction of the plaintiff from the work for the causes assigned therefor, was not authorized by the contract and was wrongful. Another part of the contract made provision of a different remedy for *delays* in the completion of the work over the date fixed, *viz*: That the plaintiff should forfeit $10 per day for every day that the building remained uncompleted after the date specified. But, whether this eviction by the defendant

was right or wrong, the fact remains, and is not disputed, that when the buildings had reached a point very nearly approaching completion—so nearly in fact that it might be said from all the evidence that they were substantially complete, the defendant stepped in and took the work out of the plaintiff's hands and completed what was left to be done, as his evidence says, at a cost of $466.31. Even should we admit that the plaintiff had done those things which, under the contract, would have fully warranted the defendant in taking the work away from him and completing it himself, then also the contract provides that he should be paid the *contract* price less the sum that it cost the defendant to complete what was left undone at the time of the eviction. The chief defense apparently insisted upon by the defendant in his pleadings and at the trial and here in argument seems to be that the plaintiff is precluded from any recovery at all unless he can first show that the architect had been satisfied and had certified that the amount sued for was due and owing. The provisions in the contract for supervision by the architect over the payments to be made and of arbitraments by him of the amounts to be paid must be held to be superseded by that covenant in the same contract making provision for the eviction of the builder and completion by the owner, after such eviction, and that further provide that on such eviction the builder shall be paid the *contract price* less the cost of the work and material supplied by the owner after such eviction. There is no provision that the architect, shall af-

ter such eviction, still adjust, supervise or dictate payments or their amounts. Under the terms of this contract, when the defendant evicted the plaintiff, whether rightfully or wrongfully, he waived all the provisions of the contract for arbitrament, supervision or dictation by the architect of work and payments to be made after such eviction ; and by the terms of the contract itself, then undertook himself to complete what was left undone, and to pay the *contract price* less the cost to him of the labor and materials supplied by him. Entertaining these views of the proper construction to be put upon the contract between these parties, we think that the charge objected to above and assigned as error was entirely proper, and in a very terse, clear manner gave to the jury the law by which they were to be governed in arriving at their adjustments of the differences between the parties. The questioned charge seems to us to have tracked the varied provisions of the contract between the parties with singular conciseness, adapting itself at the same time to the facts adduced in evidence. Under this view of the case we may remark here that as soon as it appeared in proof by the plaintiff that he had been evicted from the work by the defendant before its entire completion, that he could still, under the clause of the contract last discussed, recover any balance due him after making the deductions pointed out in this charge of the court; and that such recovery could properly be had under the special count on the contract in his declaration ; and that, with such proof, it became unnecessary for him to show that he had ob-

tained a certificate from the architect that the sum sued for was due. In contending that the plaintiff was compelled to show the approval of the architect and a certificate from him that the sum sued for was due, as a condition precedent to his right of recovery, the defendant seems to have lost sight entirely of this provision in the contract for the eviction of the builder by the owner, and for the completion by the latter of incomplete work, and payment then of the contract price less the cost of the work supplied by him.

For like reasons we think there was no error.in the following paragraph of the court's charge, that is assigned as the tenth error : "The performance by the plaintiff of his agreement according to plans and specifications is a necessary condition for his recovery, unless the jury believe from the evidence that the plans or methods of performance have been waived by the defendant or his agent, or he was prevented by the act of Providence." From the undisputed evidence it appears that the defendant by his agent did waive the full completion of the work by taking it away from the plaintiff, and completing it himself.

We do not discover any error either in the following paragraph of the court's charge, assigned as the eleventh error : "If the jury believe from the evidence that the plaintiff failed to perform his contract in such respect as not waived by the defendant or his agent, or that the plaintiff has been fully paid for his work, you will find a verdict for the defendant." This instruc-

tion if erroneous at all erred in favor of the defendant, and we can not see how he could have been injured thereby.

The refusal of the court to give the four following instructions requested by the defendant are assigned as the twelfth, thirteenth, fourteenth and fifteenth errors : 1st, "If the jury believe from the evidence that the architect has not certified the sum sued for in this action is due and payable, then the plaintiff can not recover." 2nd. "If the jury believe from the testimony that the plaintiff did not perform his agreement with the defendant to the satisfaction of the architect, then the plaintiff can not recover." 3rd. "The performance by the plaintiff of his contract with the defendant is a condition precedent to his recovery in this case." 4th. "If the jury find from the testimony that the plaintiff did not in good faith fulfill his contract with the defendant, the plaintiff can not recover." After what has been said in reference to the prevention by the defendant of the entire completion of the works by the plaintiff it becomes apparent that there was no error in the refusal to give these instructions.

The sixteenth and last error assigned is the entry of judgment for the plaintiff, instead of for the defendant. From what has been said this assignment can not be sustained. The entire contract price that the plaintiff was to have received for this work was $14,730.55, including some small charges for extras not contemplated by the contract. The payments made by the defendant that seem to be undisputed aggregate $12,-592.65, which, deducted from the agreed price, left a

balance of $2,137.90. The jury, after hearing all the evidence, rendered a verdict for $1,516. It is apparent from this verdict that the jury gave to the defendant credit for the $271.63, proved to have been paid by him in discharge of a material-man's lien on the premises, and, besides, a liberal allowance for work that was left incomplete at the time of the defendant's eviction of the plaintiff from the premises; upon the necessary cost or value of which uncompleted work there was conflict of evidence that it was the jury's province alone to reconcile. Whether they allowed any deductions for the delay of the plaintiff in the completion of the work at the date contracted for, does not appear, but whether this entered into the make up of the verdict or not, does not matter here, as there was proof that the delay was caused by the sinking of a chimney and foundation pier through some hidden defect or cavity in the substratum of the earth under them that could not have been foreseen or provided against by the plaintiff, and which, if true, exempted him from the forfeit of $10 dollars per day, provided against unnecessary delays in the contract. Whether the delay, therefore, was necessary and beyond the control of the plaintiff, or was unnecessary, and therefore demanded a forfeiture of the stipulated *per diem* demurrage was a question for the jury. Though there is considerable laxity in the pleadings for both the plaintiff and defendant, yet the case seems to have been tried fairly upon its merits, and substantial justice seems to have

been done between the parties, and we see no valid reason for disturbing the result.

The judgment below is affirmed.