JACOB SUMMERLIN, *et al.*, APPELLANTS, VS. THOMPSON & CO., APPELLEES.

1. The liens provided by the act of 1887 (Chapter 3747) may be enforced for labor done and materials furnished in the erection of a building after the act went into effect, although the contract for its erection was entered into prior to that time.

2. A proceeding to enforce a lien given by this act is regulated by statute, and the party resorting to it must allege in his affidavit the facts which entitle him under the statute to the relief demanded, but if the affidavit complies substantially with all the requirements of the statute it is sufficient.

24

3. The provision of the statute that a contractor or sub-contractor of the buildings therein mentioned, when required in writing to do so, shall furnish the person having the work done a correct list of all persons who, as sub-contractors or material men, are furnishing materials therefor, and a refusal to furnish such list may be pleaded in bar of the lien claimed, unless it can be shown that all claims for materials so furnished have been paid, does not impose upon a plaintiff the necessity of stating in his affidavit that a demand has been made for the list and the same furnished, or that no demand has been made, as the case may be. Whatever defenses a defendant may have under this provision of the statute may be set up by plea.

4. A clause in a building contract, that should the contractors and a building committee named disagree as to the quality of material, or the proper construction of any part of the building to be erected, then the architect named shall decide the issue, and his judgment shall be final as to the matters of dispute, which shall include all disagreements as to the amount and value of work for which payment is demanded, is valid and binding upon the parties. But in a proceeding to enforce a lien claimed by the contractors as a balance due on the building, if the defendants do not set up said clause in the contract in abatement of the action, but interpose pleas involving a consideration before the jury of the entire merits of the controversy between the parties, and proceed to trial on the issues presented without insisting on the decision of the architect, and without raising any objection to the testimony of plaintiffs to sustain their case, the right to an adjustment of the differences between the parties by the architect will be considered as waived.

5. The act of 1887 (Chapter 3747) is not amenable to the objection that it is unconstitutional because it confers special powers or special jurisdiction upon the courts, or changes the general rules of practice in favor of a class.

6. Where the testimony that a building to be erected is designed for school purposes, this alone is not sufficient to show that the building was erected for *public* school purposes by virtue of any public authority under either state or municipal regulation.

Whether or not such a building would be subject to a mechanic's lien under the act of 1887, *supra,* not decided, as the question is not presented.

7. Assignments of error which seek to present questions here not mooted in the trial court, and which are of such a character as can not be raised primarily in the appellate court, will not be considered.

8. Evidence in this case considered and held sufficient to sustain the verdict of the jury.

Appeal from the Circuit Court for Polk county.

The facts in the case are stated in the opinion of the court.

*G. A. Hanson* for Appellants.

*Foster & Gunby* for Appellees.

MABRY, J. :

M. E. and W. B. Thompson, composing the firm of Thompson and Co., instituted proceedings by affidavit on the 7th day of March, A. D. 1888, in the Circuit Court for Polk county against Jacob Summerlin, G. A. Hanson and D. Hughes, as the Board of Trustees of Summerlin Institute, of Bartow, Florida, to enforce a lien on the institute building for a balance of $5,267-.47, alleged to be due for the erection of the same.

The affidavit states that Thompson & Co. are mechanics, contractors, builders and material men, and that there is due said firm for work done and material furnished during the latter part of the year 1887, and the months of January, February and March, 1888, by Jacob Summerlin, G. A. Hanson and D. Hughes, as

the Board of Trustees of Summerlin Institute, of the town of Bartow, Florida, a balance of $5,267.47 on the contract price for the erection of a two-story brick building of certain dimensions given, situated on block fourteen (14) of Summerlin school lands in said town, containing one and one-half acres, more or less, the property of said trustees of said institute. That said material was furnished for, and said labor done in the erection of said building under written contract with said trustees, and was completed and ended on the third day of March, 1888, and said firm claim a lien on said building and the real estate upon which it is situated as above described, and have filed their lien in the office of the Clerk of the Circuit Court for said county, where it appears of record. Also that payment of said balance has been demanded of said trustees, and refused by them within six months from the completion of said contract, to-wit: Since the third day of March, 1888, and that this affidavit is made in good faith, and not through malice or vexation, in order that said Thompson & Co. may obtain a writ of attachment issuing out of the Circuit Court for said county, returnable instanter against said described building, and the interest of the owners therein and the said real estate upon which it is situated, for the sum of said balance due, together with costs and reasonable attorneys' fees for foreclosing said lien, as by statute in such cases made and provided.

A bond was filed by Thompson & Co., and a writ of attachment and summons were issued returnable in-

stanter, by virtue of which the property described in the affidavit was levied upon and said trustees summoned to answer. They appeared and demurred to the affidavit on the grounds that it did not set forth the contract, nor recite the terms and conditions thereof, so that the court could decide or see what are the terms or conditions thereof. 2. It does not allege that the terms of the contract have been fully complied with according to its terms, or that all conditions precedent have been performed by plaintiffs. 3. It does not show that plaintiffs as contractors and builders furnished all the labor or materials for said building, or that they have paid for all such materials and labor as were furnished by other parties, so that all other liens save their own had been discharged. 4. It does not show how much was to be paid for said building, nor how much has been paid, while they only claim a balance as due; and that the affidavit "does not set forth with precision any single fact that entitles them to the lien claimed." This demurrer was overruled May 5th, 1888, and defendants filed three pleas on the 12th of that month. The first plea alleges that defendants do not owe plaintiffs anything. The second one states that plaintiffs have not completed the building as they allege in their affidavit, and that nothing is due them on said contract or otherwise. The third plea alleges "by way of cross action" that plaintiffs were indebted to defendants at the beginning of this suit, in this, that plaintiffs entered into a written contract on the 15th day of March, 1887, by which they agreed to erect and complete the two-story building

referred to in their affidavit according to certain plans and specifications then before them, and to furnish all the materials, labor and tools necessary therefor, and to furnish all the materials and workmanship of first-class in every particular, and to have the building completed by the first day of October, to the satisfaction and acceptance of defendants. And it was agreed in said contract. that G. A. Hanson, on behalf of the defendants, should constitute the building committee, and if he and the plaintiffs should disagree as to the quality of material or the proper construction of any part of said building, then Charles L. Yorke, architect, should decide the issue, and his judgment should be final as to the matters of dispute, which includes all disagreements as to the amount and value of work for which payment was claimed. The defendants paid to plaintiffs the sum of $14,273.15, said payments being made up by the regular payments according to the contract to the fourth payment, and the remainder paid by the plaintiffs' request to parties furnishing materials, and all of said payments were made upon the faith of plaintiffs' promise to do said work according to the contract. Notwithstanding all of which, plaintiffs not only delayed said work to the great injury of defendants, and notwithstanding each payment was made in advance of the time when it fell due by the contract, still the plaintiffs failed and refused, and still fail and refuse, to complete said building according to contract, and also failed when notified by G. A. Hanson that the material used for wainscoting and finishing the win-

dows, and also the workmanship on the same was not satisfactory, and that the down-spouts from the roof, the window-heads, the hard oil-finish, painting, and the finish inside the bell tower were not acceptable or in accordance with the contract, to correct the same, or to submit to the decision of Charles L. Yorke, the architect, as they were bound by contract to do, and kept defendants out of the possession of the building, to their great wrong and injury in the premises. Wherefore defendants say they are damaged in the sum of $5,000, for which they claim judgment in this their cross-action, over and above any sum claimed by plaintiffs, and also for costs and an attorney fee of $300 herein expended.

Issue was joined on these pleas, and during a term of the Circuit Court held in June, 1888, the case was tried and resulted in a verdict and judgment in favor of plaintiffs for $3,150, with interest from the first of March then past, $350 attorneys' fees, and costs of suit. From this judgment the trustees have appealed.

The decision of the court in overruling the demurrer to the affidavit is assigned here for error. The affidavit alleges that the sum sued for is the balance due on a contract for work done and material furnished the latter part of the year 1887, and the months of January, February and March, 1888, in the erection of the building mentioned, and was completed and ended the third day of March, 1888. The time when the contract was entered into is not stated, but the allega-

tions in reference to the work done and materials furnished are sufficient to bring the claim sued for under the act of 1887, Chapter 3747. The liens provided for by this act "shall be created at the time any labor is done, or material furnished, and shall continue for six months from the last day upon which such labor was done, or material furnished." It also provides that the liens created by it may be enforced in favor of the person entitled thereto by his making affidavit, or his agent or attorney, before the officers named, that there is due and unpaid such person a sum of money (specifying it) for work done or material furnished, or both (as the case may be) specifying when and where the labor was done, or the material was furnished, and if such lien be such as to attach to any lot or lands, describe the lot or lands; and also that demand of payment has been made, and payment has been refused, and that such affidavit is made in good faith, and not through malice or vexation. This proceeding is statutory, and the party resorting to it must allege in his affidavit the facts which entitle him under the statute to the relief demanded. Strong vs. Lake Weir Chautauqua and Lyceum Association, 25 Fla., 765, 6 South. Rep., 882; Stearns vs. Jaudon, 27 Fla., 469, 8 South. Rep., 640. We think the affidavit before us is in compliance with the act of 1887, *supra*, and that the demurrer thereto was properly overruled. Strong vs. Lake Wier Chautauqua and Lyceum Association, *supra*. Under the first ground of the demurrer, that the affidavit does not set out the terms

and conditions of the contract, counsel for appellants cites several cases holding that a complaint in proceedings to enforce a mechanic's lien should allege the terms and conditions of the contract under which the work was done, or material was furnished and for which a lien is claimed, but the statutes under which these decisions were made required such a description of the contract. The proceeding being statutory, we must look to that source in determining what is necessary to be stated. In Stearns vs. Jaudon, *supra*, it was said that "it was not the purpose of the eighteenth section of the statute, *supra*, to prescribe a sufficient formula of allegation as to the work or labor, but its meaning was that the affidavit should show that the work or labor was such as entitled the plaintiff to a lien under at least some one of the numerous and varying provisions of the statutes giving liens." An affidavit that states the facts required by the statute in order to secure the lien, and also complies with the express requirements of the statute in other respects is sufficient. We are not authorized to incorporate other requirements than those mentioned in the statute.

The objection that the affidavit does not allege that the terms of the contract have been complied with on the part of the plaintiffs, can not avail in view of the showing that it is in compliance with what the statute requires in such proceedings. In addition, the allegation that the balance is due on the contract for

erecting the building in question, is in effect an aver-
ment that it is due according to the terms of the
contract.

The eighth section of the act under consideration
provides that a contractor or sub-contractor of the
buildings mentioned therein, when required in writing
to do so, shall furnish the person having the work
done a correct list of all persons who, as sub-contract-
ors or material men, are furnishing materials therefor,
and a refusal to furnish such list may be pleaded in
bar of the lien claimed for the work done, unless it
can be shown that all claims for materials so furnished
have been paid for. This does not impose upon a
plaintiff the necessity for stating in his affidavit that
a demand has been made for the list and the same fur-
nished, or that no demand has been made, as the case
may be. These are not facts entitling a party to a
lien, and whatever defenses a defendant may have un-
der this section by reason of a refusal to furnish the
list, may be set up by plea.

None of the grounds alleged in the demurrer to the
affidavit are good, in our judgment, and the court did
not err in overruling it.

After the verdict was rendered against appellants,
they made a motion to arrest the judgment and for a
new trial, because, 1st, the verdict is contrary to law
and the evidence, and is excessive ; 2nd, because the
verdict is contrary to the charge of the court ; 3rd, be-
cause the proof showed that the written contract on

which the suit is based was entered into and the work begun before the passage of the act under which these proceedings are had, and therefore plaintiffs are not entitled to proceed under the act of 1887, and for other good reasons apparent upon the face of the proceedings.

Many assignments of error are made here that will not be considered for the reason that the questions sought to be presented by them were not raised in the court below. At least five assignments of error are predicated upon the giving or refusing to give certain charges by the court, and there is, as appears from the record, but one exception taken to the rulings of the court in this respect, and that is to the refusal to give the following charge asked by the defendants, *viz :* "The act under which suit is brought was approved June 3d, 1887, and if the contract was entered into anterior to that date, then the plaintiffs can not recover in this case in this form of action." This assignment of error will be considered in connection with the third ground of the motion for a new trial. The evidence shows that appellees entered into a written contract on the 13th day of March, A. D. 1887, with the appellants, as trustees of Summerlin Institute, of Bartow, Florida, and thereby agreed to furnish all labor and material, and erect a two-story brick building on a lot of land situated in said town, according to certain plans and specifications, and on the terms mentioned in the contract. The price for the completion of the building was $17,227, and designated portions of this

·sum were to be paid as the building reached certain ·stages during the progress of its construction, leaving ·a balance of $4,327 until its final completion.

The testimony also shows that the amounts due on ·the contract for work and material furnished prior to ·the going into effect of the act of June 3d, 1887, was ·paid for, and that the amounts claimed by plaintiffs, ·and for which judgment was rendered, was for work ·done and material furnished in erecting said building ·subsequent to the time when said act went into effect.

Counsel for appellants contends that the remedy here is not under the act of 1887, but must be under the act in force when the contract was entered into. ·This case, it will be observed, is not like the one of McCarthy vs. Havis & Perry, 23 Fla., 508, 2 South. Rep., 819, where it was held that the act of 1885 was ·prospective only, and did not give a right to proceed under it to enforce a lien for work done and labor performed in the erection of a building prior to its pas-·sage. In view of the terms of the act of 1887, making its operation probably entirely prospective, ·if the money sued for in the present case was due for work done and material furnished before it went into effect, the position of counsel for appellants would be correct. But the effect of the evidence in ·the record is as above stated, that the work done in the erection of the house by plaintiffs, for which they ·sue, was subsequent to the time when the act of 1887 ·took effect. This act declares that the liens provided by it shall be created at the time any labor is done or

material is furnished.    It was competent for the Leg-
islature to create a lien and provide a remedy for its,
enforcement, to operate upon contracts already in ex--
istence.    Phillips on Mechanic' Liens, sec. 23 ; Mason
vs. Hayward, 5 Minn., 74.    The lien was created un-
der the act of 1887 at the time any labor was per-
formed or material furnished, and the proof showing
that the claim sued for by plaintiffs was for work in
building the house in question after this act went into
effect, the court did not err in refusing the charge.

We have carefully examined the evidence, to which
no exception was reserved during the trial, and can
not say that it does not sustain the verdict as to the
balance due plaintiffs for the erection of the building.
The contract called for brick window heads, but the
trustees, on representations to them by the plaintiffs
that the brick work could not be done according to the
plans, verbally consented to have galvanized iron
heads substituted. There is testimony tending to show
that these representations were not true.    The galvan-
ized heads were not put in, and there is some conflict
in the evidence as to whether or not they were to be
put in at the cost of appellees, but it is apparent that
the jury made allowance in favor of the appellants for
the failure in this respect.    The testimony of plaintiffs
tended to show that in other respects they had sub-
stantially complied with the terms of the contract as
to the erection of the building, and there was no such

counter showing as to this to justify an interference with the verdict. There was a conflict of evidence as to the amounts paid to plaintiffs before they instituted the present proceedings, but tested by the settled rules on this subject, we can not say that the verdict was so clearly against the weight of the evidence as to justify the inference that it was rendered without a due consideration of the testimony.

One of the assignments of error here is that "the testimony sustained the plea of defendants, wherein they set forth that the terms of the contract stipulated for a fixed method by which all differences as to the work, labor, materials and payments should be adjusted by reference to one Charles L. Yorke, and until that method had been fairly tried, the plaintiffs below had no right of action in any form, and it was error for the court to confine the jury to the single issue as limited by Section 19 of Chapter 3747, acts of 1887."

The first and second pleas do not set up in abatement of plaintiffs' action the method of adjustment of differences by a decision of the architect, but simply deny that plaintiffs have complied with the contract, or that anything is due them thereon, or otherwise.

The third plea sets up, among other things, that by the terms of the contract under which the building was erected it was agreed that G. A. Hanson on behalf of the defendants should constitute the building commit-

tee, and if he and plaintiffs should disagree as to the quality of material or the proper construction of any part of said building, then the architect should decide the issue, and then alleges that plaintiffs, upon notification that part of the material and workmanship on the building was unsatisfactory, refused to correct the same, or submit to the decision of the architect, as they were bound to do under the contract. While this plea alleges that the contract provides for the adjustment, by the decision of the architect, of disputed points between the parties, this is not set up in abatement of plaintiffs' right to proceed without first obtaining the decision of the architect as to the amount due. It is alleged to be a plea "by way of cross-action," and avers that the plaintiffs were indebted to defendants at the time of the commencement of the suits, and claims judgment for five thousand dollars. Disregarding the form of the plea, and considering it as an entirety, it seems to be one in the nature of recoupment for damages by reason of a failure on the part of plaintiffs to comply with the contract. After alleging the various matters therein contained as defaults on the part of plaintiffs, it concludes with an averment that defendants are "damaged in the sum of five thousand dollars, for which they claim judgment in this their cross-action over and above any sum claimed by plaintiffs, and for costs and attorney fee of $300 herein expended." Instead of relying upon the authority, under the contract, of the architect to decide upon questions of disagreement as an abatement

of the action, this defense seems to be waived by the plea, and a failure of plaintiffs to submit to the decision of the architect is set up as one of the causes of damages for which judgment is demanded in favor of defendants in what is called their cross-action. So far then as the pleas are concerned, they do not present as a defense to the right of plaintiffs to maintain their suit the method of adjustment by the architect, but the issues which they do present involve a consideration before the jury of the entire merits of the controversy between the parties. By the terms of the contract between the parties, appellees were to furnish all material and erect the building' in question according to certain plans and specifications, and among other clauses contained in it is one to the effect that G. A. Hanson, on behalf of the trustees, appellants here, shall constitute the building committee, and should he and the contractors, appellees, disagree as to the quality of material or the proper construction of any part of said building, then Charles L. Yorke, architect, shall decide the issue, and his judgment shall be final as to the matters of dispute, and this clause shall be held to include all disagreements as to the amount and value of work for which payment is claimed.

On the 6th day of March, 1888, as it appears, appellees gave written notice to G. A. Hanson that they were ready to turn over to the trustees the building constructed, and asked settlement of their claim under the terms of the contract. To this request a reply was made on the 7th day of that month

as follows: "Your note left on my desk notifying me that you are ready to turn over the college building, has been received, and also one from Jacob Summerlin covering your letter to him. Mr. Summerlin has gone to Atlanta and Jacksonville for a day or two, and Capt. Hughes is absent for a week, and I can not take the responsibility of accepting from you the building until it is finished according to my views as to the specifications and contract. As the representative of the board to look after the work, I have to notify you that the galvanized window heads as agreed upon must be put on. I also notify you that the work is not satisfactory in the following particulars: The wainscoting is not first-class material, nor the work properly done, and much of it will have to be removed. The window sash are not properly fitted, being thinner than that required to fit the frames, and in many instances where sawed off are not dressed. The tranosms are not fitted in a workmanlike manner, the strips at the ends being roughly or illy fitted. Several of the window frames are of rough, unfit timber, and badly wind-shaken. The hard oil or varnish finish is not a first-class job, and the work was not sand-papered or cleaned as should have been done, nor stains nor dirt removed. Neither were the nail holes puttied before finishing. The top story of the bell tower is not in any respect finished in a workmanlike manner. Your work must also be measured, so as to see if the stories are full height and dimensions required by the contract. This I will do at any

time when you will give me the key, or send some one with me to represent you. The window heads and tower must be finished, as we will not accept them as they are, and I hereby notify you to do it in ten days, or I shall proceed to have it done at your expense. The defects in windows, wainscoting, &c., you may either remedy, or we have a survey and deduct amount that may be decided for the difference between good work and material, and bad work and material. You must furnish us at once a list of all persons doing work upon, or furnishing materials for, the building, as also receipts in full for such labor and materials. You will also be required to give us credit for the difference in price of Florida brick used, as by contract stipulated. The board will be convened, and settlement promptly made, as soon as these little matters are satisfactorily settled." This is signed by G. A. Hanson, building committee, for the board.

he architect never made any decision on the points of disagreement between the parties, nor is there anything to show that he was ever called upon by either party to render any decision. At the time the suit was instituted the testimony shows that arbitration was talked of by the parties, but what was then said had reference, it seems, to a decision by arbitrators then to be settled, and not to an adjustment by the architect named in the contract. Jacob Summerlin testified that he left the matter to Col. Hanson and the architect, but he also states that the architect

Jacob Summerlin et al. v. Thompson & Co.—Opinion of Court.

had gone to a different part of the State and could not be found. If the architect could have been found, the witness states that he would have had him present.

The entire merits of the case as to the completion of the building according to the contract, and also as to the payments made to the appellees, were gone into before the jury, and no exceptions were taken by the appellants to any of the testimony on the ground that the architect alone, and not the jury, was authorized to decide the issues raised between the parties. It does appear that defendants requested the court to charge the jury "that plaintiffs can only recover by showing a compliance with the terms of the contract, and this applies to all payments and the method of adjusting the differences as to the work and material furnished." This charge, however, was refused, but no exception was taken to the ruling of the court on the motion for a new trial or otherwise.

The clause in the contract providing that upon a disagreement of the parties, the architect shall decide the issue, is valid and binding upon both parties. The rule of law applicable to such stipulations in contracts has been passed upon by this court in the cases of Howard vs. Pensacola & A. R. Co., 24 Fla., 560, 5 South. Rep., 356; Hanover Fire Insurance Co. vs. Lewis, 28 Fla., 209, 10 South. Rep., 297; Wilcox vs. Stephenson, 30 Fla., 377, 11 South. Rep., 659. The difficulty we encounter is not in ascertaining the rule of law applicable to clauses in contracts like the one before us, upon proper issues raised thereon, but in the present case the trouble is to determine whether

or not both parties have not waived the decision of the architect and submitted their differences to the decision of the jury. The question sought to be presented by the assignment of error now under consideration was not raised in the trial court, and, as we have seen, no exception was taken to the ruling of the court refusing to give a charge that plaintiffs could not recover without showing a compliance with the contract as to the method of adjusting the differences as to the work done and materials furnished. In view, however, of the clause in the contract, which was introduced in evidence, in reference to the decision of the architect on points of disagreement, and the further showing that disagreements as to work and material furnished did arise, we have considered the entire record on this point. Looking to the entire record, the only satisfactory conclusion is that appellants have waived their right to have the decision of the architect as to the quality of the material used in the building, and the workmanship thereon, and have submitted to the decision of the jury these questions.

Another assignment of error is, that "the court erred in sustaining this form of action, because so much of the act as confers special powers or special jurisdiction upon the courts, or changes the general rules of practice in favor of a class is unconstitutional." In Emerson vs. Gainey, 26 Fla., 133, 7 South. Rep., 526, it was held that "the proceedings prescribed by the statute (act of 1887) for the enforcement of the lien law are purely legal, and confer no equity powers upon the court, and a proceeding

at law under the statute to enforce a lien is not unconstitutional." It was remarked by the court in this case, as the constitutionality of the act was assailed, that there was an important question involved, to-wit: "Do not the summary proceedings authorized against a defendant deprive him of his constitutional right to be tried by due process of law?" As the question was not there raised, it was not decided. No such question is sought to be raised here, but the constitutionality of the act is questioned on the ground that so much of it as confers special powers or special jurisdiction upon the courts, in favor of a class, is unconstitutional. It is not denied that all persons similarly situated are equally affected by the act. Counsel cites no authority to sustain the position assumed. It is not tenable. Further discussion of it is unnecessary.

A further assignment of error is, that the court erred in sustaining plaintiffs' action, "because the pleadings and proofs show that the building erected was a public school building in which the defendants had no ownership which could be subjected to a mechanic's lien, the same being exempt from levy and sale under execution as public property, (and) not subject to mechanic's lien." It appears from the testimony that the building erected was to be used for school purposes, but it does not appear that it was erected by virtue of any public authority under either State or municipal regulation. Where a building is erected for public school purposes by virtue of legislative authority, and the statute provides a way for its pay-

ment, there is authority for the position that the statu tory provision for payment must be pursued, and a mechanic's lien can not be enforced on it, unless specially authorized by the statute. There is nothing to show that the building in question was erected under such authority, or is embraced in such a class. Whether or not a public school building erected by virtue of public authority is subject to a mechanic's lien under the act of 1887, *supra*, not decided, as this question is not presented.

A still further objection is raised here that the judgment is erroneous because it is a personal judgment against defendants, and not against them as trustees, while they are sued as trustees. Viewing the judgment entered in the proceedings before us as an entirety, and considering that the award of execution is against the property only upon which the lien is sought to be enforced, we do not think it can be said to be a personal judgment against the trustees. As the judgment awards execution only against the property, its effect is to exclude the idea of any personal judgment.

There is nothing in the record to sustain the contention that the verdict of the jury was speculative, or the result of a compromise.

Counsel for appellant made other assignments of error, which have not been overlooked, but as the questions which are sought to be raised by them were not mooted in the trial court, and as they are of such

a character as can not be primarily raised in the appellate court, we refrain from any discussion of them here.

The order of the court is, that the judgment appealed from be, and the same is, hereby affirmed.

---

### PETITION FOR REHEARING.

RANEY, C. J. :

The conclusions arrived at in the main opinion are fully sustained by the record, and that opinion disposes of all questions that were properly made by counsel for appellants.

The petition for rehearing is an infraction of the rule governing rehearings, in that it is a reargument of some of the same questions formerly submitted, and also contains citations of authorities, and even some not cited before. First National Bank vs. Ashmead, 23 Fla., 390, 2 South. Rep., 665.

A rehearing is denied.